**FIRST NATIONAL BANK OF LOUISVILLE, Appellee/Cross Appellant**

v.

**MASTER AUTO SERVICE CORPORATION, Appellant/Cross Appellee.**

**Nos. 81–2221(L), 82–1044.**

United States Court of Appeals,
Fourth Circuit.

Argued July 14, 1982.

Decided Nov. 2, 1982.

Rehearing and Rehearing En Banc
Denied March 16, 1983.

Joseph R. Lassiter, Jr., Norfolk, Va. (Hofheimer, Nusbaum, McPhaul & Brenner, Norfolk, Va., on brief), for appellant/cross appellee.

Stanley G. Barr, Jr., Norfolk, Va. (Kaufman & Canoles, Norfolk, Va., Douglas Gene Sharp, Morgan & Pottinger, Louisville, Ky., on brief), for appellee/cross appellant.

Before WINTER, Chief Judge, PHILLIPS and ERVIN, Circuit Judges.

ERVIN, Circuit Judge:

 This action arose when First National Bank of Louisville (the Bank), a secured lender and assignee of the accounts receivable of International Rubber Industries, Inc. (IRI), brought an action against Master Auto Service Corp. (Master Auto) to recover $235,655.04 owed by Master Auto to IRI for the purchase of a large quantity of all-steel radial tires. Master Auto sought a $265,927.24 set-off,[1] an amount which Master Auto contends it was entitled to have credited to its account for honoring customer claims under IRI's express tire warranty. Master Auto contended that under § 9–318(1)(a) of the Uniform Commercial Code (U.C.C.), see Ky.Rev.Stat. § 355.9–318, the Bank, as assignee of a non-negotiable chose in action, took the assignment subject to all the legal and equitable defenses Master Auto could have asserted against IRI. The district court agreed that the Bank's rights were subject to all the terms of the contract between Master Auto and IRI and any defense or claim arising therefrom, but found that under Paragraph Six of the contract (Dealer Agreement), IRI was not liable for Master Auto's warranty claims without the advance written approval of IRI or its agents. The court found that IRI had approved only $53,817.60 of warranty credits and limited Master Auto's recoupment claim to this amount.

We find that the district court erred in its determination that Master Auto was not entitled to warranty credit without the advance written approval of IRI. Accordingly, we reverse the district court and hold that Master Auto was entitled to recoup the entire $265,927.24 against the Bank's claim for $235,655.04. We also find the Bank's contention that the court abused its discretion in denying the Bank's motion to amend its complaint to include another claim against Master Auto for $247,000.00 to be without merit. Because the amount of Master Auto's recoupment claim exceeds the amount of the Bank's claim against Master Auto, we remand to the district court for entry of a final judgment denying the Bank any recovery.

I.

Master Auto is an independent retail tire dealer located in Norfolk, Virginia. From late 1976 until July 5, 1979, Master Auto purchased large quantities of "Ironsides" all-steel radial tires on account from IRI, a tire manufacturer located in Louisville, Kentucky. The tires carried an express 50,000 mile warranty to both Master Auto [2] and retail purchasers.

Because cracks frequently developed in the sidewalls of the Ironsides tire, many tires were returned to Master Auto under the warranty. The Dealer Agreement between IRI and Master Auto provided that IRI would issue credits to Master Auto's account for all defective tires adjusted by Master Auto pursuant to the warranty.

The Dealer Agreement included a warranty adjustment procedure that was to be followed by Master Auto. First, the customer was required to present to Master Auto the "original guarantee certificate," along with the defective tire. Second, Master Auto was to determine the amount of credit due the customer based upon the

---

1. Master Auto's claim actually was one for recoupment rather than set-off. A set-off is a counterclaim arising from an independent claim the defendant has against the plaintiff. Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim. See 6 C. Wright & A. Miller, Federal Practice and Procedure, Civil § 1401 (1971 & Supp.1982).

In this case, the district court found that Master Auto's claim for warranty adjustment credits arose directly from the same contract on which the Bank was suing. Thus, Master Auto's claim is one for recoupment, and hereinafter will be characterized as such for the sake of clarity.

2. The IRI confidential dealer price list to Master Auto, which contains freight and payment terms, also includes an express 50,000 mile performance warranty. The Bank argues that the district court found that IRI had not given Master Auto an express warranty. We question whether the court made such a determination. To the extent that the court made such a determination, it is erroneous.

current retail price of the tires. Master Auto then was to replace the defective tire with a new tire and collect the difference between the retail price of the new tire and the credit due the customer. If the money collected from the customer was less than the wholesale cost of the new tire, Master Auto was entitled to a credit from IRI to recover the replacement cost plus a $2.00 handling commission. Third, Master Auto was to complete a claim form which was to be signed by the customer. Fourth, the tires were to be held, along with the forms, at Master Auto's warehouse so that an IRI representative could inspect and verify the adjustment. George Blevins, an IRI representative, regularly inspected adjusted tires, approved warranty credits, and disposed of the adjusted tires. Finally, Master Auto was to mail the claim forms to IRI's Louisville office, where the adjustment was to be credited to Master Auto's account.

On November 12, 1979, Master Auto received written notice that its account debt with IRI had been assigned to the Bank pursuant to a bankruptcy settlement.[3] After Master Auto received notice of the assignment, it filed a Proof of Claim in the bankruptcy proceeding to recover the amount it allegedly was entitled to recoup for warranty adjustments. IRI objected and counterclaimed for over $3,000,000.00. The parties subsequently entered into a written stipulation in which they agreed to dismiss their claims against each other. That agreement included the following provision:

WHEREAS, IRI has allegedly assigned to First National Bank of Louisville ("Bank") any account receivable due IRI from Master; and

WHEREAS, *Master may have certain defenses or be entitled to certain set-offs against such account receivable assigned to First National Bank of Louisville; and*

WHEREAS, IRI and Master desire to settle all controversies as between themselves without affecting the rights of the Bank or any defenses of IRI relating thereto,

\* \* \* \* \* \*

3. IRI and Master hereby release and discharge each other from any and all claims of either against the other arising out of any transactions between them prior to the date hereof, provided, however, *that the rights of any other parties against Master which may have arisen out of such transactions and any defenses of Master thereto, including any right to offset claims against IRI otherwise discharged hereby, are specifically preserved and not included in such mutual release and discharge, and are not affected thereby.* (emphasis added).

On November 18, 1980, the Bank, as assignee of IRI's accounts receivable, brought an action against Master Auto to recover $235,655.04 owed by Master Auto on account to IRI for the purchase of Ironsides tires. Master Auto contended that it was entitled to a $265,927.24 recoupment against the account debt for all Ironsides tires that it had adjusted but for which it had not received credit against the account.[4]

---

**3.** On July 6, 1979, IRI filed a Petition for Reorganization under Chapter XI of the Bankruptcy Code. The events leading to the bankruptcy proceedings began in 1978 when IRI first experienced serious financial difficulties. The Bank, which handled IRI's financing and had a perfected security interest in IRI's inventory and accounts receivable, informed IRI in September 1978 that it was "saddlesore" with the IRI financing arrangement and that IRI should find a replacement lender. On January 19, 1979, IRI stopped production and on February 2, 1979, the Bank called the loan. Thereafter, the Bank arranged a plan with IRI so that IRI could stay in business for the purpose of liqui-

dating its tire inventory. The Bank sent a retired bank officer to IRI's business office to monitor IRI's operation. For the next five months, IRI continued to sell tires to Master Auto in accordance with the terms of the Dealer Agreement. Master Auto, in turn, continued to honor customer warranty claims.

**4.** Master Auto initially counterclaimed for $325,135.00, the present and alleged prospective liabilities it would incur honoring IRI warranties. The court determined, however, that Master Auto was not entitled to recoup prospective liabilities because Master Auto's estimate of prospective damages was not reliable.

At trial, Master Auto presented uncontradicted evidence to show that it had adjusted every tire in question in accordance with the procedure outlined in the Dealer Agreement and that the tires were available for inspection at Master Auto's warehouse. S. Archer Green, the President of Master Auto, also testified that George Blevins, an IRI representative, had approved $53,817.60 of warranty credits before IRI filed for reorganization under Chapter XI of the Bankruptcy Code on July 6, 1979. Although Blevins had signed the claim forms, the warranty adjustment credits had not been entered on the books and records of IRI.

The district court found, *sua sponte,* that Paragraph Six of the Dealer Agreement required prior written approval for warranty adjustment credits.[5] On that basis, the court denied all of Master Auto's recoupment claim except for $53,817.60 in warranty adjustment credits, which the court found had been approved by IRI representative George Blevins before IRI began bankruptcy proceedings on July 6, 1979.

## II.

### A.

Section 9–318(1)(a) of the Uniform Commercial Code provides that the rights of an assignee are subject to "all the terms of the contract between the account debtor and assignor and any defense or claim arising therefrom . . . ." Ky.Rev.Stat. § 355.9–318. The district court here determined that Master Auto's recoupment claim derives from the dealer agreement between IRI and Master Auto. Thus, the rights of the Bank, IRI's assignee, against Master Auto are subject to all the terms of the Dealer Agreement between Master Auto and IRI.

■ Master Auto's first contention on appeal is that the district court erred in finding that under Paragraph Six of the Dealer Agreement, Master Auto was not entitled to warranty adjustment credits without advance written approval by IRI or its agents. We agree with Master Auto that the district court misconstrued Paragraph Six of the Dealer Agreement.

It is clear from the language of Paragraph Six,[6] especially when considered in conjunction with Paragraph Five,[7] that Paragraph Six applies to the return of merchandise and not to adjusted tires. Paragraph Six expressly refers to the "return" of IRI products and receiving credit "at the net invoice price thereof or at the price in effect at the time such product is received at IRI, Incorporated, whichever price shall be lower, less such amount as IRI, Incorporated may determine to deduct for depreciation on the merchandise returned for credit." The language of Paragraph Six, which logically applies to the return of unsold

---

5. Paragraph Six of the Dealer Agreement provides:

> 6. DEALER AGREES NOT TO RETURN FOR EXCHANGE OR CREDIT ANY PRODUCT DELIVERED HEREUNDER WITHOUT IRI, INCORPORATED'S PRIOR WRITTEN APPROVAL. Upon return of any IRI Product with IRI, Incorporated's approval, Dealer agrees to prepay all transportation charges and accept credit for such Product at the net invoice price thereof or at the price in effect at the time such Product is received by IRI, Incorporated, whichever price shall be lower, less such amount as IRI, Incorporated may determine to deduct for depreciation on the merchandise returned for credit. Only IRI Products listed on the then current price lists will be considered for return. The place where merchandise is to be returned will also be determined by IRI, Incorporated. If returns are made without prior written approv-

al, credit will be determined as outlined above less a 5% penalty charge plus freight charges.

6. See note 5 *supra.*

7. Paragraph Five of the Dealer Agreement provides:

> 5. All conditions regulating purchases of tires by IRI Dealers, IRI warranties, adjustment policies, billing prices, credit terms, etc. are contained in Schedules A thru E. The purchase of IRI products implies full acceptance, without any reservation, of said Agreement.

Schedule D–1 is the Adjustment Tire Claim Form. A slightly modified version of Schedule D–1 was provided to Master Auto regularly, the reverse side of which outlined the tire adjustment procedure.

merchandise, simply is meaningless in the context of a warranty claim. Paragraph Five, on the other hand, expressly states that "all conditions regulating . . . IRI warranties, [and] adjustment policies . . . are contained in Schedules A through E." Nowhere in Schedules A through E is it stated that Master Auto *is not entitled* to warranty adjustment credits without the advance written approval of IRI. Rather, Master Auto simply is directed to hold the adjusted tires at its warehouse so that IRI can inspect them.

In *Schenuit v. International Finance Corporation,* 148 Md. 403, 130 A. 331 (1925), a case involving circumstances virtually identical to those in the present case, the Maryland Court of Appeals held that a dealer was entitled to warranty adjustment credits for all tires it had adjusted or would adjust in the future, regardless of whether the adjustments had been approved by the manufacturer or the manufacturer's assignee. In *Schenuit,* tires were manufactured by the Delion Tire & Rubber Company and sold to the Schenuit Rubber Company, a tire dealer, under the terms of a written contract. Under the contract, which warranted the tires free from defects in workmanship and materials for 10,000 miles, Schenuit was allowed credits for warranty adjustments. When customers returned defective Delion tires to Schenuit, they were examined by Schenuit. If Schenuit found that the defect was covered by the warranty, the tire was set aside and thereafter examined and passed upon by a Delion Tire employee. At some point, Delion refused to act upon Schenuit's claims for adjusted defective tires. Shortly thereafter, the invoices for tires sold by Delion Tire to Schenuit were assigned to The International Finance Corporation without any allowance for defective tires. International Finance subsequently brought suit against Schenuit to recover its account debt to Delion Tire. Schenuit asserted a recoupment claim for warranty credits. In a bench trial, the trial court held that the tire dealer was not entitled to any credit for warranty adjustments to defective tires that had not been approved by Delion Tire. The appellate court reversed, holding that the tire dealer was entitled to credit for both existing and alleged prospective liabilities for warranty defects.[8] The court reasoned that International Finance, as an assignee, had taken the contract subject to all defenses arising out of the contract and that

> the assignor under the contract warranted the tires sold and delivered to be free of defects either in their construction or the material used, and necessarily such defects existed at the time of the sale and delivery of the goods, but the discovery of such defects could only be made after the sale and use of the tire.

130 A. at 336.

As in *Schenuit,* the assignor here, IRI, had warranted the tires it sold to Master Auto. Master Auto was entitled under the Dealer Agreement to assert a claim for credit against IRI and, therefore, is entitled to assert the claim against the Bank, as assignee of IRI's accounts receivable. The right to accounts receivable simply is the right to recover the sales price of the tires sold to Master Auto pursuant to the Dealer Agreement. If the tires sold were defective, there is a failure of consideration by IRI, and the right to collect the purchase price is subject to the defense of failure of consideration made applicable to the assignee by § 9–318(1)(a) of the Uniform Commercial Code. Master Auto's claim against IRI, therefore, arose at the time a defective tire was returned and adjusted by Master Auto under IRI's warranty. Thus, inspection of the adjusted tires by IRI was not a condition precedent to Master Auto's right to warranty adjustment credits, but rather a contractual privilege that ran to IRI after Master Auto's right arose. Otherwise, IRI and the Bank, as IRI's assignee, could have defeated Master Auto's contractual right to warranty adjustment credits simply by refusing or failing to inspect the tires.

---

8. Because the district court here made a finding that Master Auto's estimate of prospective liabilities was not reliable, we are not in a position to grant the full relief that was awarded the dealer in *Schenuit.* See note 4, *supra.*

■ Had IRI not assigned its accounts receivable from Master Auto, it could not have collected the account debt without deducting all of Master Auto's warranty claims. The Bank, as IRI's assignee, has no better rights than those of IRI. Thus, the Bank's right to collect Master Auto's account debt to IRI is subject to Master Auto's entire recoupment claim for all defective tires it adjusted pursuant to the Dealer Agreement.

### B.

■ The Bank argues that Master Auto, nonetheless, is barred from asserting its recoupment claim because it pursued its claims against IRI in the bankruptcy proceedings. In light of the bankruptcy settlement between IRI and Master Auto, this argument is without merit.

During the bankruptcy proceedings, IRI and Master Auto acknowledged that IRI had assigned Master Auto's account debt to the Bank, that the Bank would assert its right to collect the account debt, and that Master Auto had a recoupment claim which it could assert against the Bank at that time. Thus, IRI and Master Auto dismissed their claims against one another with the stipulation that

> the rights of any other parties against Master which may have arisen out of such transactions and any defenses of Master thereto, including any right to offset claims against IRI otherwise discharged hereby, are specifically preserved and not included in such mutual release and discharge, and are not affected thereby.

It is clear from this stipulation that Master Auto preserved its right to assert a recoupment claim against the Bank when the Bank asserted its right to collect Master Auto's account debt to IRI.

### III.

■ The Bank's final contention on appeal is that the district court abused its discretion in denying the Bank's motion to amend. We disagree.

In addition to the claim that it was entitled to recover Master Auto's $235,655.04 account debt to IRI, the Bank alleged in its complaint that Master Auto had knowingly and wrongfully caused the Bank to lose its security interest in IRI inventory by taking possession of 7,000 "blemished" tires as collateral for a $247,000.00 "loan" to IRI.

At the initial pre-trial conference on May 7, 1981, discovery cut-off dates were set and the trial was scheduled for October 26, 1981. On August 24, 1981, counsel for the Bank had to withdraw because of a conflict of interest. Although new counsel was not formally substituted until September 19, 1981, the new counsel actively participated in depositions on September 8 and 9. On October 7, 1981, nineteen days before the trial, the Bank sought to amend its complaint to allege a "sale out of the ordinary course of business" with respect to the $247,000.00 transaction.

Master Auto opposed the Motion to Amend on the ground that it was a tactic to gain an unnecessary continuance and to re-open discovery. The court held an evidentiary hearing on October 9 and determined that the Bank had not obtained any information that it previously had not known of or had access to. We have considered the record and are unable to say that the court abused its discretion in denying the motion. We note also that the testimony at trial regarding the $247,000.00 tire sale was exhaustive. The court determined that the Bank had been notified of the $247,000.00 tire transaction soon after it occurred, that Master Auto paid for the tires or that other dealers had paid or were obligated to pay for them, that the Bank acquiesced in the transaction because it wanted IRI to liquidate its inventory, and that the Bank, therefore, was not entitled to recover on this claim. It is evident from these facts that the Bank was not prejudiced by the denial of its motion to file an amended complaint.

### IV.

Having determined that Master Auto is entitled to credit for all tires that it adjust-

ed pursuant to the Dealer Agreement, we have now only to determine the appropriate disposition of this case. The Bank contends that the case should be remanded for a determination regarding the amount of recoupment to which Master Auto is entitled. We have reviewed the record and find that a remand is not necessary.

The record shows that Master Auto presented claims for tires it had adjusted totalling $265,927.24. All tires for which Master Auto claimed warranty credits were stored at a warehouse in Norfolk, Virginia and have always been available for inspection by the Bank. The Bank stipulated at trial that there was a tire in the warehouse for each warranty adjustment claimed by Master Auto. Furthermore, no suggestion has been made that there was anything improper about the adjustments that Master Auto made. Master Auto, therefore, is entitled to have its account debt to IRI reduced by the entire $265,927.24 recoupment claim. Because the credit due Master Auto exceeds its $235,655.03 account debt, the Bank is not entitled to recover any sum of money from Master Auto. Accordingly, we remand this case to the district court for entry of a judgment consistent with this opinion.

REVERSED AND REMANDED.