United States Court of Appeals,

Fifth Circuit.

No. 91–2746.

FIRST INDIANA FEDERAL SAVINGS BANK, Plaintiff–Appellant,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, as receiver for United Savings Association of Texas, and United Savings Association of Texas, FSB, Defendants–Appellees.

July 1, 1992.

Appeals from the United States District Court for the Southern District of Texas.

Before KING and WIENER, Circuit Judges, and LAKE, District Judge[*]:

WIENER, Circuit Judge:

Plaintiff–Appellant First Indiana Federal Savings Bank (First Indiana) appeals an adverse judgment rendered in its suit on a loan participation contract (the participation agreement) that its predecessor had entered into with the predecessor of United Savings Association of Texas (Old United).[1] The district court judgment favored the Defendants–Appellees: the FDIC, as receiver for Old United, and United Savings Association of Texas, FSB (New United). Following a trial in which the jury responded to specific interrogatories only, but before judgment was rendered by the district court, Old United became insolvent and was taken over by the FSLIC, which in turn was followed by the FDIC, as receiver. Some three years after the jury's special verdicts were handed down, the district court held that when New United (as transferee of the FSLIC in its then capacity of receiver for Old United) became the owner of many of the assets formerly belonging to Old United—including its interest in the participation agreement—New United nevertheless did not become responsible for Old United's unsecured obligations that had arisen under the participation agreement. New United did acquire all subsisting rights of action of Old United under the participation agreement as well as all benefits and obligations Old United accruing under the participation agreement from and after New

---

[*]District Judge for the Southern District of Texas, sitting by designation.

[1]Even though the agreement was actually between the predecessors of Old United and First Indiana, we refer to these two institutions for the sake of simplicity and clarity.

United's acquisition of Old United's interests.  Finding no reversible error, we affirm.

I.

FACTS AND PROCEEDINGS

Old United is the successor to the original seller and First Indiana is the successor to the original buyer under the participation agreement.  It covered the development of four apartment complexes in Houston.  First Indiana acquired various interests in the participations (totalling about $5.5 million), and Old United retained ten percent of each together with management responsibilities and the right to compensation for managerial services it rendered.

Among its provisions, the participation agreement contained a repurchase option or "put" that would become exercisable at the election of First Indiana if Old United violated "any of the terms, covenants, warranties and conditions" of the participation agreement and failed to cure any such violation within 30 days after notice.[2]  The parties also agreed that Old United would (1) be held to a standard of ordinary care in its management of the loans;  (2) notify First Indiana of any default on any of the loans or "any facts which are likely to give rise to any default or any impairment of security";  and (3) pay First Indiana certain transfer fees.[3]

Three of the four apartment complexes began experiencing problems.  The loans then became delinquent and were eventually foreclosed.  First Indiana claims that Old United violated the terms of the participation agreement in failing to notify First Indiana of the problems with the loans and potential defaults.  First Indiana sent a letter to Old United notifying it of that default under the participation agreement and demanding immediate repurchase.  The letter did not give Old United 30 days to cure.

---

[2]The agreement also contained a repurchase option in favor of Old United, not at issue in this case.

[3]These fees are not adequately explained in the briefs, but they apparently have something to do with the fact three of the four properties were foreclosed.

First Indiana eventually filed suit against Old United seeking specific performance of repurchase of the participations pursuant to the participation agreement. Old United counterclaimed to force First Indiana to purchase Old United's share of the loans, and also seeking a money judgment for fees related to Old United's management of the foreclosed properties. After two attempts at summary judgment, the case was tried before a jury. Responding to special verdict interrogatories, the jury found against Old United on several issues: that it had failed to give prompt notice of facts that were likely to result in a default, that it had failed to exercise ordinary care, and that its violations were not curable. The jury also found against First Indiana on several issues: that the breaches of the participation agreement by Old United were not material, that First Indiana's notice to Old United was inadequate, and that First Indiana had waived its claims.

Following the jury verdict almost three years elapsed before the district court entered its judgment. In the meantime, Old United was declared insolvent and the FSLIC formed New United.[4] Pursuant to an acquisition agreement, the FSLIC sold many of the assets of Old United to New United. Thereafter, New United intervened in the instant suit to counterclaim and to reassert Old United's claims against First Indiana.

First Indiana then filed another motion for summary judgment, arguing that Old United's insolvency was another event of default that terminated the participation agreement and triggered repurchase. The court, however, entered judgment against First Indiana on its repurchase claim, awarding a money judgment to New United for $77,403 in unpaid fees and expenses plus interest, and dismissing First Indiana's claims against the FDIC. First Indiana timely appealed.

II.

ANALYSIS

Primarily at issue is Section 3 of the acquisition agreement between FSLIC and New United.

_____

[4]First the FSLIC and then the FDIC were substituted for Old United in this action.

It states in pertinent part:

> [New United] hereby expressly assumes and agrees to pay, perform and discharge ... (b) [Old United's] liabilities *that are secured by assets purchased by [New United]* pursuant to Section 2[5] of this Agreement to the extent of the value of the security ... *except as expressly set forth in this Section 3, [New United] will not assume any of the claims, debts, obligations or liabilities* (including without limitation, known or unknown, contingent or unasserted claims, demands, causes of action or judgments; or debts, obligations or liabilities; or commitments to loan or obligations to make future fundings or advances under existing loans or other obligations even if such loans or other obligations are acquired by [New United] ) of [Old United]....[6]

First Indiana characterizes Old United's obligations under the participation agreement as "liabilities that are secured by assets purchased" by New United. We do not agree. From the outset, the participation agreement never created anything more than unsecured personal obligations between the parties. Nothing contained in that agreement purported to secure the obligations of one party to another with any encumbrance of the interests purchased or conveyed therein. To the extent that First Indiana had any valid claims against Old United, they were not secured claims, so clearly they did not survive the transfer of assets under the acquisition agreement between the FSLIC and New United.

After it declared Old United insolvent, the Federal Home Loan Bank Board (FHLBB) determined that the aggregate value of the assets of Old United were less than its total secured and depositor liabilities, and that there were no assets available to pay unsecured creditors.[7] Under the

---

[5]Section 2 governs the transfer of all of Old United's assets to New United.

[6]Emphasis added.

[7]The FHLBB's regulations required it to follow the Texas depositor preference statute, Tex.Rev.Civ.Stat. Art. 852a § 8.09(g) in determining priority for payment of creditors. *See* 12 C.F.R. § 569c.11(a)(6) (1989), redesignated to 12 C.F.R. 389.11 (1990) 54 Fed.Reg. 42801 (Oct. 18, 1989). The Texas depositor preference statute mandates that depositors claims be paid in full before those of general creditors.

> The FHLBB's worthlessness determination not only established the value of First Indiana's unsecured claims, it also binds the courts hearing actions on those claims. *281–300 Joint Venture v. Onion,* 938 F.2d 35, 38 (5th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 933, 117 L.Ed.2d 105 (1992); *Gulley v. Sunbelt Savings, F.S.B.,* 902 F.2d 348, 351 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 673, 112 L.Ed.2d

acquisition agreement, the FSLIC transferred to New United substantially all of the *assets*[8] of Old United but only the secured, deposit, and certain tax *liabilities*. The unsecured liabilities of Old United, accrued as of the date of the transfer, were neither assigned to nor assumed by New United. The FSLIC retained all claims, demands, and causes of action of general unsecured creditors of Old United.

Because New United did not acquire any unsecured liabilities under the acquisition agreement, First Indiana's only recourse was to seek relief against the FDIC as receiver for Old United. It made little difference, however, whether the claims of First Indiana against Old United were valid, because the liabilities of Old United exceeded its assets to such an extent that there were no assets for the receiver to distribute to general creditors such as First Indiana.

In enacting FIRREA, Congress unequivocally expressed its intent to limit the maximum liability of the FDIC to the amount the claimant would have received in a liquidation under federal priority regulations.[9] In this instance, First Indiana would not have received anything had Old United been liquidated.

Congressional policy requires that creditors of failed institutions look only to the assets of the institution for recovery of their losses, and not to the taxpayers.[10] If First Indiana were to obtain a judgment in its favor, that judgment could not exceed the amount it would have received in a liquidation—in this case, nothing. Therefore, the district court could not legally enter a judgment

---

665 (1991). First Indiana did not challenge the worthlessness determination, therefore, it is conclusive as to First Indiana's claims.

[8]Those assets not transferred to New United were transferred to FSLIC in consideration of FSLIC's agreement to provide financial assistance to New United.

[9]*See* 12 U.S.C. § 1821(i)(2).

[10]*See Village South Joint Venture v. FDIC,* 733 F.Supp. 50, 52 (N.D.Tex.1990).

against the FDIC in favor of First Indiana, and was correct in dismissing the FDIC.[11]

Another reason that First Indiana cannot recover in this case is that its claims are not susceptible of redress by any court. As adjudication of the claims would be futile, First Indiana's claims are moot. A moot case exists when the court cannot grant relief that would affect the parties and redress the plaintiff's alleged wrongs.[12] Even if First Indiana's claims constitute a "case or controversy" under Article III of the Constitution, those claims should be dismissed for prudential reasons because there is no practical purpose in requiring their adjudication on the merits.[13]

Irrespective of the abstract validity of any of First Indiana's claims against Old United, there are no set of circumstances under which First Indiana can recover any money or property as a result of those claims.[14] It follows that litigating such claims would require a significant dedication of resources by First Indiana, the FDIC, and the district court. Because this expenditure of time and money will never result in First Indiana's obtaining the relief it seeks, a trial on the merits would be a completely hollow act. Consequently, the district court's dismissal of First Indiana's claims against the FDIC and that court's judgment in favor of New United and against First Indiana were proper on grounds of prudential mootness.

We find it noteworthy here that among the assets transferred by the FSLIC from Old United to New United is Old United's interest as seller under the participation agreement. Our decision today affects only those claims made by First Indiana with respect to the actions of Old United. As a successor in interest to Old United under the participation agreement, New United succeeds to all of

---

[11]*FDIC v. Browning,* 757 F.Supp. 772, 773 (N.D.Tex.1989).

[12]*Iron Arrow Honor Soc. v. Heckler,* 464 U.S. 67, 70, 104 S.Ct. 373, 374, 78 L.Ed.2d 58 (1983) (per curiam).

[13]*See Franks v. Bowman Transportation Co.,* 424 U.S. 747, 756 n. 8, 96 S.Ct. 1251, 1260 n. 8, 47 L.Ed.2d 444 (1976).

[14]*See FSLIC v. Locke,* 718 F.Supp. 573, 585–88 (W.D.Tex.1989).

Old United's rights—past, present and future—arising under that agreement. Similarly, New United is responsible for the performance of all obligations of the seller under the agreement, but only those accruing from and after the transfer by the FSLIC to New United. Therefore, it is only to the extent that New United should fail to live up to its responsibilities under the participation agreement *after* its transfer from the FSLIC that First Indiana would have a right of action against New United.

Finally, First Indiana argues that in the event we affirm the district court's decision, it is entitled to offset against the judgment the $15,257.43 in transfer fees allegedly due from Old United. We must again disagree. For the reasons discussed above, this sum represents an unsecured obligation of Old United that neither survived Old United's insolvency nor was transferred under the acquisition agreement. Therefore, First Indiana has no right to assert its claim for such amounts against New United whether by offset or otherwise. As far as obligations of the seller under the participation agreement are concerned, New United got a "fresh start" as of the time it acquired the interest of Old United by transfer from the FSLIC. As far as rights and benefits of the seller under the participation agreement are concerned, New United stepped into the shoes of Old United irrespective of the date that any such rights and benefits may have accrued or in the future may accrue.

III.

CONCLUSION

Regardless of the validity of First Indiana's unsecured claims, First Indiana can recover nothing from New United because liability for First Indiana's claims were not transferred to or assumed by New United. Furthermore, First Indiana is precluded from recovering from Old United or the FDIC because First Indiana would have received nothing in a liquidation of Old United and the FDIC is immune. On appeal, First Indiana does not dispute the judgment entered in favor of New United for First Indiana's share of expenses in the management of the loans. Therefore, the district court did not err in granting the money judgment in favor of New United and dismissing all claims

against the FDIC.  The judgment of the district court is

AFFIRMED.