**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for New Bank of New England, Plaintiff–Appellee,**

v.

**MARINE MIDLAND REALTY CREDIT CORPORATION; Delaware Credit Corporation (USA), Defendants–Appellants.**

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for New Bank of New England, Plaintiff–Appellant,**

v.

**MARINE MIDLAND REALTY CREDIT CORPORATION; Delaware Credit Corporation (USA), Defendants–Appellees.**

Nos. 92–1019, 92–1020.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 30, 1993.

Decided March 2, 1994.

**ARGUED:** John Sutton Stump, McGuire, Woods, Battle & Boothe, McLean, Virginia, for appellant. Jerome Anthony Madden, Federal Deposit Insurance Corporation, Washington, D.C., for appellee. **ON BRIEF:** Thomas F. Farrell, Robert R. Vieth, McGuire, Woods, Battle & Boothe, McLean, Virginia, for appellant. Ann S. DuRoss, Assistant General Counsel, Richard J. Osterman, Jr., Senior Counsel, S. Alyssa Roberts, Federal Deposit Insurance Corporation, Washington, D.C., for appellee.

Before ERVIN, Chief Judge, HALL, Circuit Judge, and CHAPMAN, Senior Circuit Judge.

## OPINION

ERVIN, Chief Judge:

The Federal Deposit Insurance Corporation ("FDIC") acting as receiver ("Receiver–New Bank") for New Bank of New England, N.A. ("New Bank") was substituted as plaintiff in this action against Marine Midland Realty Corporation and Delaware Credit Corporation (USA) (collectively, "Marine"), arising out of a participation agreement entered into by Marine and Bank of New England, N.A. ("BNE"). Marine asserted a counterclaim against New Bank for breach of the same agreement.

The district court granted Receiver–New Bank summary judgment dismissing Marine's counterclaim. The district court denied Receiver–New Bank's request for a jury trial for its breach of contract claim. The district court further found for Receiver–New Bank on its request for an accounting, denying Marine the use of recoupment. Neither side was granted attorneys' fees although under the participation agreement, such an award could have been made.

Marine appeals the district court's dismissal of its counterclaim. Marine also appeals the district court's refusal to grant Marine attorneys' fees. Receiver–New Bank asserts in a cross-appeal that the district court erred in refusing to permit a jury trial for its breach of contract claim. Receiver–New Bank also now asserts for the first time that the district court lacked subject matter jurisdiction because Marine did not comply with the mandatory administrative claims process set forth in the Financial Institution Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), codified at 12 U.S.C. § 1821(d)(13).

We find that the district court erred both in dismissing Marine's counterclaim and in denying Receiver–New Bank's request for a jury trial. We further find that Marine met all necessary administrative filing requirements and Receiver–New Bank's jurisdictional challenge is without merit. Receiver–New Bank shall be granted a jury trial on its breach of contract claim, at which Marine's counterclaim shall be presented. The accounting determination made by the district court is vacated and shall be redetermined following the new trial. If necessary, the doctrine of recoupment shall be permitted to balance any payments due. A new determination on the award of attorneys' fees in accordance with the participation agreement shall be made following the new trial. The decision of the district court is therefore vacated in part and remanded.

## I.

Marine entered into a loan participation agreement ("Participation Agreement") with BNE. When BNE later became insolvent, the FDIC was appointed as receiver ("Receiver–BNE"). The FDIC established New Bank as a bridge bank[1] and Receiver–BNE transferred the BNE acquisition to New Bank according to a Purchase and Assumption Agreement. New Bank, as successor to BNE, subsequently brought this action against Marine requesting relief for five claims arising from the Participation Agreement.[2]

Marine asserted a counterclaim against New Bank for breach of the same Participation Agreement. To preserve its rights, Marine also filed a claim against Receiver–BNE according to the administrative claims procedure set forth in FIRREA.

When New Bank later became insolvent, the FDIC was appointed receiver. The BNE assets and liabilities held by New Bank were transferred to Receiver–New Bank. Receiver–New Bank was substituted as plaintiff in this action.

The district court granted Marine summary judgment on Counts II and III, not now on appeal. The court also granted Receiver–New Bank summary judgment dismissing Marine's counterclaim. Because the court found that Receiver–New Bank's remaining claims sought only equitable relief, it denied Receiver–New Bank's request for a jury trial. At the close of Receiver–New Bank's case, the court granted Marine's motion for a directed verdict and dismissed Count V. At the end of the trial, the court found for Marine on Count IV which alleged breach of contract by Marine. The court

---

1. 12 U.S.C. § 1821(n)(1)(A) provides that:

    When 1 or more insured banks are in default ... the Corporation may, in its discretion, organize, and the Office of the Comptroller of the Currency shall charter, 1 or more national banks with respect thereto with the powers and attributes of national banking associations, subject to the provisions of this subsection, to be referred to as bridge banks.

Bridge banks are created, *inter alia*, to assume assets and liabilities of failed insured banks. Section 1821(n) provides for their organization and operation.

2. The five counts include (I) request for accounting, (II) breach of fiduciary duty, (III) breach of agency, (IV) breach of contract, and (V) rescission based on misrepresentation.

found for Receiver–New Bank on Count I requesting an accounting and held that Marine must account to Receiver–New Bank for Receiver–New Bank's share of a letter of credit associated with the Participation Agreement. The court permitted Marine to recoup only amounts paid to preserve the capital.

The issues that must be treated herein include (1) whether the district court erred in granting summary judgment dismissing Marine's counterclaim on the basis of either the *D'Oench, Duhme* doctrine or the district court's interpretation of the Purchase and Assumption Agreement; (2) whether Marine initiated the required administrative proceedings before asserting its counterclaim in district court so that the court had subject matter jurisdiction over the claim; (3) whether Receiver–New Bank was entitled to a jury trial on Count IV of its complaint alleging breach of contract and requesting a refund of all payments made under the Participation Agreement or compensatory damages; (4) whether Marine is entitled to setoff or recoupment; and (5) whether either party is entitled to attorneys' fees.

## II.

This case arises out of a Participation Agreement in which Marine sold to BNE, as participant, a 42.21% interest in a construction loan by Marine to Rowe Properties–Bank Street Limited Partnership (the "Borrower") for the development of an office building in Norfolk, Virginia. The loan was to be secured in part by a deed of trust on the property and by a $3,000,000 letter of credit. The Participation Agreement, entered into by Marine and BNE on August 12, 1988, provided that Marine would advance funds to the Borrower according to a separate Loan Agreement and that BNE would promptly pay Marine its share of the advance upon notification by Marine.

The building project encountered numerous problems including the death of the Borrower's "idea man," unsuccessful implosion of the existing structure on the building site, further construction delays and cost overruns. By July 1989, Marine and BNE were aware of all these problems and consulted

each other to reach some agreement on an appropriate response. In July 1989, Marine and the Borrower restructured the Loan Agreement with the approval of BNE. The Restructured Loan Agreement called for the Borrower to furnish an additional unconditional letter of credit in the amount of $2,500,000 by October 8, 1989, and extended the completion date from December 1, 1989 to September 1, 1990. BNE continued to fund Marine's advances to the Borrower following the restructuring.

The Borrower was unable to provide an unconditional letter of credit in October and offered instead to provide a conditional letter of credit. Marine informed BNE in writing of this development on October 23. Marine and BNE stopped funding the Borrower in October until the letter of credit issue was resolved. Marine eventually accepted the conditional letter of credit on November 28, 1989 and resumed funding of the loan. BNE, however, did not resume payment of its share of the advances to Marine.

The Borrower eventually went into default and Marine stopped all payments to the Borrower in early June 1990. Marine then learned on June 10 that the partially completed office building was in violation of the Virginia building codes. To secure and seal the building and to preserve its capital, Marine expended $811,731. BNE did not contribute.

In seeking to recover funds advanced under the defaulted loan, Marine drew down the $3,000,000 letter of credit, part of the original security for the loan, on July 20, 1990. Marine notified BNE on July 30, 1990 that Marine had drawn down the letter of credit but had set off BNE's share in an attempt to "bring the loan into balance."

In January, 1991, BNE was declared insolvent and the FDIC was appointed receiver. The Receiver–BNE succeeded to all the rights, titles and interests of BNE pursuant to 12 U.S.C. § 1821(d)(2). The FDIC then chartered New Bank as a bridge bank. Receiver–BNE entered into a Purchase and Assumption Agreement with New Bank under which Receiver–BNE transferred some of BNE's assets and liabilities to New Bank.

Part of the assets transferred to New Bank included the Participation Agreement. Receiver–New Bank claims that New Bank assumed only the benefits of the Participation Agreement while Marine claims that New Bank assumed both the benefits and the liabilities of the agreement.

New Bank, as successor to BNE, filed a complaint in July, 1991 in district court seeking relief for breaches of the Participation Agreement, including recovery of its share of the $3,000,000 letter of credit. New Bank was dissolved on July 13, 1991 and the FDIC was appointed receiver. Receiver–New Bank was substituted as the proper plaintiff in this case.

### III.

The district court dismissed Marine's counterclaim on two different theories. The theory set forth in its Memorandum Opinion stated that the counterclaim was dismissed on the basis of *D'Oench, Duhme & Co. v. Federal Deposit Ins. Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its subsequent codification. The second theory was set forth in the district court's Order stating that the counterclaim was dismissed upon the finding that "any liability to the defendants for the claims asserted in the counterclaim is governed by Section 2.1(x) of the Purchase and Assumption Agreement, and liability is expressly not assumed by the plaintiff for the liability asserted in the counterclaim."

### A.

█ The district court erred in dismissing Marine's counterclaim on the basis of the *D'Oench, Duhme* doctrine. That doctrine applies only when a party attempts to recover assets of a failed banking institution from the FDIC as receiver on the basis of an unwritten agreement.

In *D'Oench, Duhme,* a borrower gave a note to a bank and entered into an oral side agreement that the bank would not demand payment on the note. The FDIC later acquired the note and brought an action to enforce it. The debtor defended on the basis of the side agreement. The Supreme Court held that this defense was not enforceable against the FDIC because it contravened a policy to protect an insured banking institution from "secret agreements." 315 U.S. at 458, 62 S.Ct. at 680.

█ The purpose of the doctrine is "to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91, 108 S.Ct. 396, 401, 98 L.Ed.2d 340 (1987). The doctrine protects the FDIC from claims or defenses based on unwritten agreements. Here, however, Marine's claim is based on the Participation Agreement and *D'Oench, Duhme* is not applicable. The district court erred in dismissing Marine's counterclaim on the basis of the *D'Oench, Duhme* doctrine.

### B.

█ The district court also erred in dismissing Marine's counterclaim based on its interpretation of Section 2.1(x) of the Purchase and Assumption Agreement. The court found that New Bank assumed only the assets under the Participation Agreement and assumed none of the liabilities thereunder. That part of section 2.1, however, must be read in conjunction with the text immediately preceding it. Section 2.1 reads as follows:

> 2.1 *Liabilities Assumed by Assuming Bank.* The Assuming Bank hereby expressly assumes at Book Value and agrees to pay, perform, and discharge all of the following liabilities of the Failed Bank as of Bank Closing, except as otherwise provided in this Agreement:
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> (b) liabilities for indebtedness secured by mortgages, deeds of trust, chattel mortgages, security interests or other liens or indebtedness affecting or secured by any assets acquired by the Assuming Bank pursuant to this Agreement;
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> Notwithstanding the foregoing provisions of this Section 2.1, the Assuming Bank expressly does not assume under this Agreement ... (x) any liability to fund the

unfunded portion of Loan Commitments to commercial borrowers....

Receiver–New Bank and the district court focused on § 2.1(x) while glossing over the provisions of § 2.1(b). Section 2.1(b) clearly says that the Assuming Bank (New Bank) assumes liability for indebtedness affecting any asset acquired by the Assuming Bank. If the intent was to assume only secured indebtedness, the carefully drafted provision would not have included the phrase "or indebtedness affecting."

In addition, Marine's interpretation of § 2.1(x) is convincing. The Assuming Bank expressly did not assume the liability to fund the unfunded portion of Loan Commitments, a defined term including "any Loan or extension of credit the terms of which require or may require the Assuming Bank to extend credit or funds after Bank Closing." This exception indicates that liability was not assumed for commitments accruing after bank closure. BNE's obligation to pay its share of the loan advances accrued prior to BNE's closing. That liability is clearly one "affecting" the assets assumed by BNE. The district court's interpretation of the contractual language is mistaken.

Receiver–New Bank argues that its interpretation of the provision should be accepted because the FDIC allegedly has the power under 12 U.S.C. § 1821(d)(2)(G)(i)(II) to transfer any asset to a bridge bank without transferring the accompanying liability. Receiver–New Bank cites *First Indiana Federal Sav. Bank v. Federal Deposit Ins. Corp.*, 964 F.2d 503 (5th Cir.1992), for this proposition. The language of the purchase and assumption agreement in *First Indiana* was much more specific than in the case at hand. In *First Indiana*, the relevant language regarding the liabilities expressly not assumed was as follows:

> New United expressly assumes ... liabilities that are secured by assets purchased by New United.... New United will not assume any ... liabilities ... or commitments to loan or obligations to make future fundings or advances under existing loans or other obligations even if such loans or other obligations are acquired by New United....

964 F.2d at 506. Although the court held that New United did not assume the liabilities, the reasoning was based on the fact that the liability in question was not secured and the language clearly stated that it was therefore not assumed. In *First Indiana*, the language of the purchase and assumption agreement left no question about whether the liability at issue had been assumed. The FDIC had drafted a provision that would permit it to transfer only the benefit of an agreement without transferring the liabilities thereunder.

■ Given the potentially inequitable nature of such a transfer, the power to so separate claims should only be permitted upon a perfectly clear intent to do so. Such an intent was not evidenced in the Purchase and Assumption Agreement between Receiver–BNE and New Bank. When New Bank assumed the benefits of the Participation Agreement, it also assumed the attendant liabilities. The district court erred in dismissing Marine's counterclaim on the basis of its mistaken interpretation of Section 2.1 of the Purchase and Assumption Agreement.

## IV.

■ Receiver–New Bank's claim that the district court lacked subject matter jurisdiction is without merit. Receiver–New Bank claims that because Marine did not assert its counterclaim against Receiver–New Bank in an administrative proceeding pursuant to 12 U.S.C. § 1821(d)(13), no Article III court has subject matter jurisdiction over the claim. Marine did, however, file a claim with Receiver–BNE. Receiver–BNE denied the demand, and Marine filed an action seeking to overturn that denial in the United States District Court for the District of Columbia. That court has stayed the proceedings pending the resolution of this action.

The administrative claim filed against Receiver–BNE is the exact same claim for liability under the Participation Agreement based on identical facts that Receiver–New Bank asserts should be brought against Receiver–New Bank. The policy behind the administrative claims procedure is to provide a streamlined method for resolving most

claims against failed institutions in a prompt, orderly fashion, without lengthy litigation. *Marquis v. Federal Deposit Ins. Corp.*, 965 F.2d 1148, 1152 (1st Cir.1992). That objective was clearly addressed by Marine's filing against Receiver–BNE. To require an additional administrative claim against Receiver–New Bank would seem to thwart the goal of the statute by further complicating and lengthening the resolution of this matter. The statute does not require such a result.

Because all administrative filing requirements were met, the district court had subject matter jurisdiction over all claims in this action.

## V.

The district court erred in refusing to grant Receiver–New Bank a jury trial on Count IV of its complaint. Receiver–New Bank's Second Amended Complaint reads in pertinent part:

### Count IV

### (Breach of Contract)

\* \* \*

Therefore, the Plaintiff requests that the Court order ...

(c)(i) That, if the Court finds that [Marine] has breached its contract ... that it order that the Participation Agreement be rescinded and that [New Bank] be refunded all of the money that it has invested in the Participation Agreement, or in the alternative

(ii) that it be given judgment against [Marine] for $15 million compensatory damages; ...

(f) For such other, further relief as this Court deems just and proper.

Although the claim requests the equitable remedy of rescission, it also requests monetary relief. Receiver–New Bank asks to be refunded all payments made under the Participation Agreement or $15 million in compensatory damages or any other proper relief. Receiver–New Bank is clearly requesting a legal remedy. Insofar as the complaint requests a money judgment it presents a claim which is unquestionably legal. *Dairy*

*Queen, Inc. v. Wood*, 369 U.S. 469, 476, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962).

Receiver–New Bank's equitable claim for rescission along with its legal claim for money damages cannot defeat its Seventh Amendment right to a jury trial. This court has recognized the principle that a jury trial may be demanded where the claim for money is joined with an equitable claim. *Tights, Inc. v. Stanley*, 441 F.2d 336, 344 (4th Cir. 1971), *cert. denied*, 404 U.S. 852, 92 S.Ct. 90, 30 L.Ed.2d 91 (1971). The district court erred in denying Receiver–New Bank a jury trial on Count IV.

The finding of error in denying a jury trial does not end the inquiry, however. This court need not reverse the district court's decision unless its denial of a jury trial was harmful to Receiver–New Bank. *Sailor v. Hubbell, Inc.*, 4 F.3d 323 (4th Cir.1993). The error was not harmful if the district court would properly have ordered judgment as a matter of law against the plaintiff had it been allowed to present its claims before a jury. *Id.* Here, the district court would not have rendered judgment as a matter of law against Receiver–New Bank. The denial of a jury trial was therefore harmful.

The issues presented in Count IV pertain to Marine's management of the loan in accordance with the Participation Agreement. Whether Marine's actions complied with requirements of the contract is a question of fact that should have been decided by a jury. The district court's ultimate conclusion was not that a judgment as a matter of law was appropriate but rather that "there is not a preponderance of the evidence that Marine breached the Participation Agreement...." Reasonable minds might differ on the evidence in conflict. Receiver–New Bank was entitled to have that determination made by a jury. Count IV is remanded for a jury trial.

## VI.

The district court refused to allow Marine to recoup any amount that BNE may owe to Marine for BNE's unpaid share of Marine's loan advances to the Borrower, consistent

with its dismissal of Marine's counterclaim. Because the district court found that under the Purchase and Assumption Agreement, New Bank had not assumed the liabilities of the Participation Agreement but only the benefits thereof, the court determined that Marine had no claim against New Bank.

As discussed above, the district court's interpretation of Section 2.1 of the Purchase and Assumption Agreement was faulty and Receiver–New Bank may be liable under the Participation Agreement. That issue will be decided when Marine's counterclaim is heard at the new trial. If it is determined that BNE owed money to Marine, that liability was transferred to New Bank and subsequently to Receiver–New Bank. The doctrine of recoupment should be allowed to balance amounts owing.

The doctrines of setoff and recoupment are often confused. Setoff is a counterclaim arising from an independent claim that the defendant has against the plaintiff. Recoupment is the right of the defendant to have the plaintiff's monetary claim reduced by reason of some claim the defendant has against the plaintiff arising out of the very contract giving rise to the plaintiff's claim. *First Nat'l Bank v. Master Auto Service Corp.*, 693 F.2d 308, 310 n. 1 (4th Cir.1982). Marine's claim is one for recoupment because it arises out of the same agreement that Receiver–BNE seeks to enforce; the doctrines are, however, analytically similar. Setoff has been permitted against the FDIC if the defendant has a provable claim and there is mutuality of obligation. *Interfirst Bank Abilene, N.A. v. Federal Deposit Ins. Corp.*, 777 F.2d 1092 (5th Cir.1985); see also *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892).

A claim for setoff or recoupment is provable against the FDIC if (1) it exists before insolvency, (2) the liability is absolute and certain in amount and (3) it is timely made before distribution of the receivership assets except distribution through a purchase and assumption agreement. *Interfirst*, 777 F.2d at 1094. Here, Marine's claim against BNE accrued before BNE became insolvent. The claim is for the certain sum representing BNE's unpaid share of loan advances. The claim was also timely made. Marine asserts that its claim was made at the time it drew down the letter of credit. Marine's letter to BNE dated June 30, 1990 is cited as evidence for this proposition. Alternatively, Marine raised its claim for setoff as its counterclaim before the receivership assets of either Receiver–BNE or Receiver–New Bank had been distributed except through purchase and assumption agreements. Marine thus may have a provable claim against Receiver–New Bank, as will be determined at the new trial.

Receiver–New Bank maintains that even if Marine has a provable claim, it is not enforceable because there is no mutuality of obligation because New Bank did not assume the liability portion of the Participation Agreement. This argument cannot prevail following the above analysis demonstrating that indeed New Bank did assume the liabilities associated with the Participation Agreement.

When the amounts owing by each party are determined at trial, the doctrine of recoupment should be permitted to balance the amounts before payment is required.

## VII.

Section 13(j) of the Participation Agreement provides that each of the parties is entitled to recover from the other costs and expenses, including attorneys' fees, incurred in enforcing the agreement. The district court denied both parties attorneys' fees on the basis that each party prevailed and failed to some extent. A new determination regarding the award of attorneys' fees in accordance with the language of the contract should be made following the new trial.

## VIII.

Receiver–New Bank shall be granted a jury trial on Count IV, at which Marine's counterclaim shall be presented. The accounting determination made by the district court in response to Count I is vacated and shall be redetermined following the new trial. If necessary, the doctrine of recoupment shall be permitted to balance any payments

due. A new determination on the award of attorneys' fees in accordance with the Participation Agreement shall be made following the new trial. The decision of the district court is thus vacated in part and remanded for further proceedings in accordance with this opinion.

*VACATED IN PART AND REMANDED.*