**Johnathan LEE X**

v.

**Doris R. CASEY, Clerk, et al.**

**Civ. A. No. 3:90CV00250.**

United States District Court,
E.D. Virginia,
Richmond Division.

July 8, 1991.

726

Robert William Jaspen, U.S. Atty's. Office, Richmond, Va., for Doris R. Casey and David G. Lowe.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiff, Johnathan Lee X, a Virginia State prisoner proceeding *pro se* and *in forma pauperis,* filed this *Bivens* type complaint[1] on April 2, 1990. Plaintiff alleged that the defendants denied him access to the courts in violation of the First and Fourteenth Amendments.[2] Specifically, he asserted that the defendants failed to docket and file a notice of appeal submitted by him for a previous action. He sought a declaratory judgment, monetary damages and such further relief as the Court deemed just and proper. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331.

By Order entered September 18, 1990, the motions to dismiss filed by defendants Lowe and Casey were granted. The claims against defendant Dohnal were also dismissed as frivolous. Plaintiff X appealed. On February 4, 1991, the United States Court of Appeals for the Fourth Circuit affirmed the dismissal of defendants Lowe and Casey. The dismissal of defendant Dohnal was vacated and the action was remanded for further disposition.

On May 6, 1991, defendant Dohnal filed a motion for summary judgment. The plaintiff responded on June 6, 1991. In addition, plaintiff filed a document entitled "Motion to Set Aside ...". Also pending is a motion to amend the complaint filed by X on June 4, 1991. The case is currently ripe for disposition. A statement of facts will

---

**1.** *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**2.** The Fourteenth Amendment is clearly not applicable to the facts of this case because the defendants are federal, not state officers. The Court, therefore, presumes that plaintiff actually seeks relief for deprivation of his Fifth Amendment rights.

follow. Thereafter, the Court will address plaintiff's motion to set aside, the defendant's motion for summary judgment, and lastly, the plaintiff's motion to amend.[3]

## I. *Statement of facts*

The record reveals that on or about January 15, 1987, plaintiff X filed a complaint under 42 U.S.C. § 1983 to challenge the conditions of his confinement at the Mecklenburg Correctional Center. By Order entered November 24, 1987, the complaint was dismissed by The Honorable David G. Lowe, United States Magistrate Judge. *See Johnathan Lee X v. Edward Murray, et. al.,* Civil Action No. 87–0317 and 87–0018–L (hereinafter referred to as "Lee X I").[4]

On November 30, 1987, X wrote a letter to Magistrate Judge Lowe in which he objected to the dismissal of his § 1983 complaint. He stated that he wished to either proceed with his supplemental complaint or appeal the November 24, 1987 Order.[5] The envelope which contained the letter was addressed to "David G. Lowe Magistrate" and sent by certified mail, return receipt requested. It is important to note that this letter is the only document which reflects the plaintiff's desire to appeal. A separate notice of appeal is *not* contained in the file of Lee X I.

Defendant Dohnal is a Deputy Clerk for the United States District Court for the Eastern District of Virginia at Richmond. Dohnal states that on December 2, 1987, she collected the mail from the post office box designated for the Clerk of the Court.[6] She signed the return receipt for the plaintiff's letter, sorted the mail and delivered the unopened letter to the Chambers of Magistrate Lowe on that date. The envelope was marked "Received" by the Magistrate's office on December 2, 1987. Sometime thereafter, the letter was placed on the left hand side of the file with other

---

**3.** The Court will address plaintiff's motion to amend in two parts. Plaintiff's desire to add another deputy clerk as a defendant will be discussed in conjunction with an analysis of his substantive claims and defendant Dohnal's dispositive motion. Plaintiff's motion to add an alternative theory for recovery will be addressed separately.

**4.** Lee X I is the central focus of the instant complaint. The Court has, therefore, carefully reviewed the file, as well as all of the documents contained therein.

**5.** The entire letter states:

> 500 Spring Street
> Richmond, Virginia 23219
> November 30, 1987

David G. Lowe, Magistrate
United States District Court
Eastern District of Virginia
Richmond, Virginia 23205
RE: Johnathan Lee X v. Edward Murray, et al.,
 Civil Action No. 87–0317–R
Dear Magistrate Lowe:

On November 30, 1987, I received your memorandum and order, stating that you had dismissed my requests in the above case for injunctive and monetary relief so that the issues stemming from the settlement in Brown may be filed in a motion to enforce and that you had dismissed my suits.

For your information, I am no longer at the Mecklenburg prison. Do you realize what your dismissal of my suits and your conversion of them mean to me? It means that you have deprived me of an opportunity to seek monetary damages for undeniable deprivations of my rights. Since I am no longer at Mecklenburg, my requests for injunctive relief is moot. I clearly understand that. But I don't understand how you can take it upon yourself to dismiss my request for monetary relief and convert or allow a conversion of *my* complaints from a 1983 to an enforcement proceeding without my consent. In light of your dismissal and conversion of *my* suits, I now have no remedy available to compensate me for the deprivation of my rights.

I strenuously object to your dismissing my supplemental complaint and my request for monetary damages so that the issues may be presented in an enforcement proceeding. I respectfully move this Court to allow my supplemental complaint to proceed as it is and to order defendants to file a response. *Otherwise, I hereby appeal the entire memorandum and order to the Fourth Circuit for review.*
Thanks for reading this letter.

> Very truly yours,
> (written signature)
> Johnathan Lee X

P.S. # 1.
The records will verify that I informed the Clerk of this Court of my transfer in June, 1987, or shortly thereafter.

**6.** Defendant Dohnal affirms that she has no recollection of ever receiving a letter sent by the plaintiff to the Court. Her statements are based upon her examination of the subject letter, the Court file and the routine procedures followed by the Clerk's Office. *See* Declaration of Dohnal.

correspondences. It was not marked filed or docketed as a notice of appeal.

Defendant Dohnal has no personal knowledge of what happened to the letter after December 2, 1987. She surmises that it was returned to the Clerk's Office on December 8 because it was marked "Received" by that office on that date. She does not know why the letter was not docketed as a pleading or a notice of appeal. She concludes, however, that the letter was returned to the Clerk's Office without a note or any other instruction which would direct a deputy clerk to treat it as a pleading. The file for Lee X I was not transmitted to the United States Court of Appeals for the Fourth Circuit for appeal, but was closed.

The plaintiff alleges that he did not learn that his "notice of appeal" was misfiled until on or about February 16, 1989. *See* Complaint at p. 6.[7] As a result, he contends that he lost his opportunity to appeal. He, therefore, concludes that the defendant unlawfully denied him access to the court and deprived him of his First and Fifth Amendment Rights.

## II. *Plaintiff's Rule 60(b) Motion*

As previously stated, by Order entered September 18, 1990, the claims against defendants Lowe and Casey were dismissed. On May 28, 1991, X submitted a document entitled "Motion to Set Aside Memorandum and Order dated September 18, 1990". He essentially seeks to rejoin Lowe and Casey as defendants to this action by vacating the September 18 Order. The motion will be construed as a motion for relief from judgment pursuant to Federal Rules of Civil Procedure 60(b).

■ Relief from a judgment or order may be granted pursuant to Rule 60(b) on the basis of mistake, inadvertence, excusable neglect, newly discovered evidence, fraud, or any other reason justifying relief from the operation of the judgment. Additionally, the movant must also "demonstrate the existence of a meritorious claim or defense" to the action. *Square Construction Co. v. Washington Metropolitan Area Transit Authority*, 657 F.2d 68, 71 (4th Cir.1981). A Rule 60(b) motion is not authorized when it is nothing more than a request for the district court to change its mind. *United States v. Williams*, 674 F.2d 310, 313 (4th Cir.1982). The Court finds that the instant motion is wholly without merit and is essentially a request for the Court to change its mind.

Plaintiff asserts two grounds for relief in support of his motion. First, he alleges that there is "newly discovered evidence" of a conspiracy to deliberately suppress evidence in this case. Next, he claims that defendant Casey committed perjury by filing a false affidavit in support of her motion to dismiss. Plaintiff's motion is conclusory and without factual support. It is frivolous and requires only brief comment.

■ On May 6, 1991, defendant Dohnal filed a motion for summary judgment and attached a copy of the plaintiff's November 30, 1987 letter as an exhibit. She noted that the letter was contained in the record of Lee X I and was placed on the left hand side of the file. The plaintiff claims that the letter is newly discovered evidence. He essentially argues that the defendants deliberately suppressed the letter because it was not used as an exhibit or produced earlier in the litigation. He also contends that since the letter is in the subject file, defendant Casey falsely stated that she did not have knowledge of it.

Plaintiff's argument is unclear at best. The November 30, 1987 letter was written by X. It is the subject of this action. The defendants never denied its existence. Presumably plaintiff could have used it as his own exhibit at any time.[8] The defendants certainly had no obligation to produce it. In fact, the plaintiff never filed a demand or motion for production of documents. *See* Fed.R.Civ.P. 34. Moreover, there is no evidence to suggest that the

---

7. It is interesting to note that the plaintiff apparently made no attempt to determine the status of his appeal for a full year subsequent to the dismissal of his complaint. *Id.*

8. In addition, the letter is contained in a public record. Therefore, the plaintiff could have obtained a copy of it by simply writing to the Clerk of the Court and requesting it.

letter was ever removed from its file, let alone suppressed.

Further, plaintiff's accusations against defendant Casey are baseless. She affirmed that she does not perform routine docketing functions. *See* Declaration of Casey at p. 1. Casey is the Clerk of the Court with offices at the Alexandria Division. Lee X I was litigated in the Richmond Division and the record was stored here. In addition, thousands of documents are filed with the Richmond Division each year. To suggest, therefore, that Casey had personal knowledge of an individual letter simply because it is contained in a file in this Court is wholly without merit. Accordingly, plaintiff's Rule 60(b) motion will be DENIED.

### III. *Motion for Summary Judgment*

■ On May 6, 1991 defendant Dohnal filed a motion for summary judgment. As a result, the Court must determine two factors. First, whether there is any genuine dispute as to a material fact. And, if there is no dispute of fact, whether the defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. The defendant's burden is to show that there is no *genuine* dispute as to a material fact. However, she is not required to *negate* her opponent's entire case. *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (Purpose of Rule 56 is to isolate and dispose of factually unsupported claims). She need only disclose the *absence* of evidence to support that case. *Id.* Once the defendant has met this obligation, the burden shifts to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). He must then demonstrate that a *genuine* issue of material fact actually *exists* to prevent summary judgment. *Id.* "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] not sufficient". *Id.* at 252, 106 S.Ct. at 2512. Moreover, the plaintiff may not rely upon vague or conclusory allegations. He must show that there is concrete *evidence* sufficient to enable a reasonable jury to return a verdict for him. *Id.* at 252–54, 106 S.Ct.

at 2512–13; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Court may not weigh the evidence to determine its credibility, but must determine whether there is *enough* evidence to require submission to a jury. *Anderson*, 477 U.S. at 252–53, 106 S.Ct. at 2512–13. Therefore, if the evidence is clearly one-sided or if it is merely colorable, summary judgment may be granted. *Id.* at 249–50, 106 S.Ct. at 2510–11.

Applying this standard to the record generated by the parties in this case, there is no question that summary judgment is appropriate for three reasons. First, there is no evidence whatsoever to indicate that defendant Dohnal failed to file and docket the plaintiff's "notice of appeal". Next, at best, the plaintiff might be able to prove that a clerk acted negligently. However, negligence is not sufficient to state a claim for relief under *Bivens*. Lastly, even if negligence were sufficient to state a *Bivens* claim, the deputy clerk in this case is not liable to the plaintiff because she did not fail to perform a ministerial task.

### A.

■ There is simply no evidence to suggest that defendant Dohnal deprived the plaintiff of his right of access to the courts. The uncontroverted facts are that on December 2, 1987, defendant Dohnal signed for a certified letter addressed to Magistrate Lowe, in accordance with her duties. That same day, she delivered the unopened envelope to the Magistrate's Chambers. She was never aware of the contents of the envelope. Nor does she have any personal knowledge of what transpired after it was delivered. Moreover, Dohnal affirms that she was not responsible for prisoner cases or the plaintiff's "notice of appeal". *See* Dohnal's Declaration. There is no genuine issue of material fact or any factual basis for liability. Therefore, it is clear that defendant Dohnal is entitled to judgment as a matter of law. Accordingly, her motion for summary judgment will be GRANTED.

**B.**

Although the plaintiff submitted a "reply", he did not contest the above facts. Instead, he discussed the "culpability" of unnamed "court officers" and filed a motion to amend the complaint. The purpose of both submissions is less than clear. They primarily raise arguments which are not only vague and conclusory, but which are devoid of factual support.[9]

██ It appears, however, that X seeks additional time to discover the identity of the deputy clerk who was responsible for docketing and filing his "notice of appeal". *Pro se* litigants may be afforded an opportunity to identify individual defendants only when they allege meritorious claims. *Gordon v. Leeke*, 574 F.2d 1147, 1152–53 (4th Cir.), *cert. denied*, 439 U.S. 970, 99 S.Ct. 464, 58 L.Ed.2d 431 (1978); *see also Oksanen v. Page Memorial Hospital*, 912 F.2d 73 (4th Cir.1990) (courts may deny summary judgment and direct discovery).

██ However, X has failed to submit any evidence to demonstrate that he has a meritorious claim. The only concrete evidence presented in this case shows that on or about December 8, 1987 a deputy clerk failed to docket and file X's *letter* as a "notice of appeal".[10] X contends that this event did not come to his attention until February of 1989, over a year later. Nevertheless, he somehow concludes that a deputy clerk deprived him of his right of access to the courts. Such facts are simply not sufficient to successfully prosecute a *Bivens* claim because, at best, they might show negligence. Therefore, as will be more fully discussed below, the plaintiff is not entitled to relief as a matter of law.

It is well established that the right of access to courts is an essential and funda-mental right. It is so well entrenched in our system of justice that it is too often presumed but not defined. In fact, a number of courts have recognized that the right of access arises from several different constitutional sources. *See e.g. Boddie v. Connecticut*, 401 U.S. 371, 376, 91 S.Ct. 780, 785, 28 L.Ed.2d 113 (1971) (Due Process protects access to courts); *cf. California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) (right of access to courts protected by First Amendment's right to petition government); *see also Ryland v. Shapiro*, 708 F.2d 967, 971–71 (5th Cir.1983) (right of access has roots in the Privileges and Immunities Clause under Article 4 of the Constitution and the First Amendment); *see McCray v. Maryland*, 456 F.2d 1, 6 (4th Cir.1972) (access to courts may be protected by Due Process Clause and First Amendment).

██ Plaintiff X alleges that he was deprived of his right of access to the courts under both the First and Fifth Amendments. However, it is more appropriate to analyze his claims under the Due Process Clause of the Fifth Amendment for several reasons. First, the United States Supreme Court has permitted *Bivens* actions against federal officers for violations of the Fourth Amendment, *Bivens*, 403 U.S. 388, 91 S.Ct. 1999 (1971); the Due Process Clause of the Fifth Amendment, *Davis v. Passman*, 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979); and the Cruel and Unusual Punishment Clause of the Eighth Amendment, *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980). *See Dunbar Corp. v. Lindsey*, 905 F.2d 754, 760–61 (4th Cir.1990). It has not recognized *Bivens* claims for alleged First Amendment viola-

---

**9.** Regrettably, these submissions typify the manner in which the plaintiff has prosecuted this action. It is important to note at this juncture that, while the Court has carefully considered all of X's submissions, it is difficult to understand, let alone make sense of, his broad allegations and circuitous arguments.

**10.** On several occasions, the plaintiff's pleadings suggest that he filed a separate notice of appeal with his letter. However, Dohnal's motion dis-closed the absence of a separate notice or appeal. X was, therefore, required to present some evidence to show that he did, in fact, file such notice. He failed to do so. He did not submit a copy of it or even an affidavit to substantiate its existence. Additionally, no separate notice of appeal is contained in the file of Lee X I. As a result, the court finds that the letter is all the plaintiff wrote.

tions.[11] Moreover, the Supreme Court has " 'responded cautiously to suggestions that *Bivens* remedies be extended into new contexts' ". *Id.* at 761 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988). In view of the Supreme Court's admonitions, it would be inappropriate to create a new cause of action under *Bivens* based upon the First Amendment when an alternative theory of recovery based upon the Due Process Clause of the Fifth Amendment already exists.

In addition, the majority of cases which have considered a prisoner's right of access to courts employ the constitutional standard for, and the protections afforded by, the Due Process Clause. *See e.g. Wolff v. McDonnell*, 418 U.S. 539, 577–80, 94 S.Ct. 2963, 2985–87, 41 L.Ed.2d 935 (1974) (right of access to courts is founded in the Due Process Clause); *Procunier v. Martinez*, 416 U.S. 396, 419–21, 94 S.Ct. 1800, 1814–15, 40 L.Ed.2d 224 (1974) (Due Process necessarily requires that prisoners be afforded access to courts to seek redress for constitutional violations); *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Ex parte Hull*, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941). However, the precedent in this Circuit does not clearly define the specific source of the right of access to the courts.

In *McCray v. Maryland*, 456 F.2d 1 (1972) a prisoner filed a § 1983 complaint against a state court clerk. He alleged that the clerk's negligence impeded his abil-ity to file a habeas petition. The District Court dismissed the complaint for two reasons. It held that court clerks were entitled to quasi-judicial immunity and that negligence was insufficient to state a cause of action under § 1983. The United States Court of Appeals for the Fourth Circuit reversed on both points. It found that court clerks are not entitled to immunity for failure to perform ministerial duties. It also held that the right of access to courts is a constitutionally protected right. The Court did not explain the specific source of this right. However, it cited cases which relied upon the Due Process Clause; and for comparison and analogy, it also cited a case which relied upon the First Amendment. It is unclear, therefore, whether the *McCray* Court found that the right of access to courts arose from the First Amendment directly and became applicable to state actors through the Due Process Clause of the Fourteenth Amendment. Or, whether it used the First Amendment case for purpose of illustration only.[12] To the extent that the former interpretation is true, *McCray* is distinguishable from this case because it created a remedy under § 1983. As previously stated, the United States Supreme Court has not permitted *Bivens* actions for First Amendment violations and has cautioned against expansion of that nonstatutory remedy. The Court will, therefore, invoke the Due Process Clause to analyze the plaintiff's claims.

---

**11.** In fact, the Supreme Court unanimously declined to create a *Bivens* remedy for a First Amendment violation in *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), even though it acknowledged that existing remedies did not "provide complete relief for the plaintiff". *Id.* at 388, 103 S.Ct. at 2417. While the facts of that case are clearly distinguishable from this action because administrative remedies were available to that plaintiff, it illustrates the persistent hesitation which the Court has exercised before creating new *Bivens* remedies. *See also Schweiker v. Chilicky*, 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988); *cf Korb v. Lehman*, 919 F.2d 243 (4th Cir.1990) (recognizing *Bivens* remedy for violation of private employees First Amendment rights).

**12.** This latter interpretation is more likely. The First Amendment case cited by the *McCray* Court is *California Motor Transport Co. v.* *Trucking Unlimited*, 404 U.S. 508, 509, 92 S.Ct. 609, 611, 30 L.Ed.2d 642 (1972). That case is very different from the facts and circumstances raised by *McCray*, as well as the instant complaint. In *California Transport*, highway carriers deliberately conspired to prevent a competitor from obtaining operating rights. They accomplished this by instituting and appealing state and federal court actions against their competitor. The competitor filed for injunctive relief. He alleged that the constant law suits evidenced a conspiracy to violate anti-trust laws by preventing him from competing in the market. The defendants claimed that they were merely exercising their right of access to the courts. The Supreme Court held that the First Amendment right of access did not immunize defendants, who deliberately abused that right, from liability for violation of anti-trust laws.

To state a claim for violation of a Due Process right, a plaintiff must initially demonstrate conduct which rises to the level of a constitutional "deprivation". *See Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (a negligent act by an official does not constitute a deprivation of any interest protected by the Due Process Clause).[13] To satisfy this requirement, a plaintiff must show intentional, deliberate or arbitrary misconduct. *Id.* "Injuries inflicted by governmental negligence are not addressed by the United States Constitution". *Id.* at 333, 106 S.Ct. at 666. *See also Wilson v. Seiter,* — U.S. —, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991) (deliberate indifference, not negligence, required for Eighth Amendment claim challenging conditions of confinement); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (deliberate indifference to medical needs *not* malpractice states an Eighth Amendment claim).

■ As previously stated, the record created by the parties shows, at best, that a deputy clerk negligently failed to file a letter as a notice of appeal. Negligent conduct simply does not give rise to a constitutional claim for violation of the Due Process Clause under *Bivens. See also Mitchell v. Aluisi,* 872 F.2d 577 (4th Cir. 1989) (clerks negligence in failing to recall a warrant does not state a constitutional claim); *McDonald v. Dunning,* 760 F.Supp. 1156 (E.D.Va.1991) (clerk's negligent delay in issuing a bench warrant does not state a constitutional violation); *Peterson v. Jackson,* 1988 WL 110474, Lexis No.

11574 (D.Md.1988) (negligent investigation prior to arrest is not sufficient to state a *Bivens* cause of action). As a result, the complaint fails to state a valid claim for relief against a deputy clerk and must be dismissed. It would be inappropriate, therefore, to permit the plaintiff to amend the complaint to add another deputy clerk as a defendant to this action.[14]

C.

In addition to the foregoing, the facts in this case present a unique situation which deserves comment. Arguably, a deputy clerk might be liable under some circumstances for failure to perform a ministerial act. *McCray v. Maryland,* 456 F.2d 1 (4th Cir.1972). Clerical duties generally include filing and docketing papers for the court. *Id.* at 4. However, plaintiff X did not mail a pleading, motion or even an actual notice of appeal to the court for Lee X I. *See* Fed.R.App.P., Appx. form 1. Rather, X sent a letter addressed to an individual judge in which he discussed, among other things, his conditional desire to appeal a court order.

■ In *pro se* cases, courts generally exercise judicial discretion to construe such letters as notices of appeal. *See e.g. Coppedge v. United States,* 369 U.S. 438, 442 n. 5, 82 S.Ct. 917, 919 n. 5, 8 L.Ed.2d 21 (1962); *see also Cobb v. Lewis,* 488 F.2d 41, 45 (5th Cir.1974). However, a deputy clerk certainly does not possess the discretionary authority or legal training required to do so. There is no evidence to suggest that the Court actually exercised such discretion

---

**13.** The Court recognizes that the complaint in *Daniels* was prosecuted under 42 U.S.C. § 1983. However, *Bivens* claims are subject to the same *limits* of liability as a § 1983 action. *See e.g. Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

**14.** The Court finds that the same limitations would apply even if the plaintiff's claims were, in fact, cognizable under the First, as opposed to the Fifth Amendment. For the essence of X's allegations is that he was *deprived* of his right of access to the court. This type of claim necessarily requires some form of deliberate conduct. To find otherwise would not only be inconsistent with the lesson taught by *Daniels,* but would "trivialize" the First Amendment. *See also Parratt v. Taylor,* 451 U.S. 527, 545, 101 S.Ct. 1908,

1917, 68 L.Ed.2d 420 (1981) (Stewart, J., concurring) (To hold that the loss of a prisoner's hobby kit is a Fourteenth Amendment deprivation of property trivializes the constitution.) The cause of action created by *Bivens* was designed to protect individuals from abusive use of governmental power. *Bivens,* 403 U.S. at 391–95, 91 S.Ct. at 2002–04. Therefore, to create a new cause of action for mere negligence would exceed the limited scope and distort the purpose of the *Bivens* remedy. No doubt it would also open the federal courts to a new and unintended trend in civil rights litigation. Especially in those cases where the litigants are unfamiliar with, and many times do not understand, the litigation process.

or judicial authority in this case. *See* Dohnal's Declaration at p. 3. As a result, plaintiff X has failed to show that a deputy clerk failed to perform a *ministerial* act. Therefore, even assuming that his allegations of negligence are sufficient, he has still failed to state a valid claim for relief. For all of the reasons stated above, no useful purpose would be served by permitting the plaintiff to add another clerk as a defendant to this action. Accordingly, plaintiff's *motion to amend will be* DENIED and the defendant's motion for summary judgment will be GRANTED.

### IV. Plaintiff's Motion To Amend The Complaint *To Add An Alternative Theory of Recovery*

The plaintiff also seeks to add the United States of America as a defendant, as well as several claims for relief under the Federal Tort Claims Act ("FTCA"). 28 U.S.C. §§ 1346, 2671–80. Plaintiff appears to raise two arguments to support his motion and to explain his inordinate delay in raising these claims. Each is factually untenable. And, it is not necessary to address them because it is obvious that the plaintiff's motion must be denied for several reasons.

■■■■ First, plaintiff's motion is untimely. The cause of action arose in this case in December of 1987. X, therefore, had ample opportunity to research, discover and plead an alternative theory for recovery. He also knew or should have known the facts which form the basis for his new claim. Yet, he failed to present any *valid* reason why he did not raise them prior to this date. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962) (leave to amend should be granted absent undue delay, futility of amendment, bad faith or prejudice); *see also First Nat'l Bank of Louisville v. Master Auto Service Corp.*, 693 F.2d 308 (4th Cir.1982) (motion

to amend properly denied where plaintiff knew or should have known facts for alternative claim). Next, the allegations contained in plaintiff's motion to amend are vague, conclusory and unsupported by any facts. It would, therefore, be inappropriate to authorize X to proceed with this pleading. Finally, X has not demonstrated that he has timely or properly exhausted the appropriate administrative remedies for his claims.[15] As a result, he may not now proceed with such claims in this Court. 28 U.S.C. § 2675; *see also United States v. Kubrick*, 444 U.S. 111, 122–24, 100 S.Ct. 352, 359–60, 62 L.Ed.2d 259 (1979) (FTCA claim barred unless presented to appropriate federal agency within two years after claim accrues); *Plyler v. United States*, 900 F.2d 41 (4th Cir.1990) (exhaustion requirement is jurisdictional and may not be waived). Accordingly, plaintiff's motion to amend will be DENIED and the complaint will be DISMISSED.

---

15. For example, plaintiff X states that he notified the Attorney General of his claims on April 20, 1991. However, the Attorney General's Office is not the appropriate agency for FTCA claims against employees of the United States District Courts. It also appears that X failed to timely file his notice of claims because the dates

that he recites do not coincide. Finally, conspicuously absent from plaintiff's motion are any exhibits, affidavits or other affirmative proof to buttress his claim that he actually complied with the required administrative procedures.