Edward R. **MYERS**, Plaintiff

v.

Stephen O. **SIMPSON**,
et al., Defendants.

No. 1:11CV552 (LMB/JFA).

United States District Court,
E.D. Virginia,
Alexandria Division.

Dec. 9, 2011.

Opinion Denying Reconsideration
Jan. 31, 2012.

---

Edward R. Myers, Sterling, VA, pro se.

Alexander Francuzenko, Cook Kitts & Francuzenko PLLC, Fairfax, VA, for Defendants.

*MEMORANDUM OPINION*

LEONIE M. BRINKEMA, District Judge.

Before the Court is defendants' Motion to Dismiss the Amended Complaint [Dkt. No. 18]. The issues have been adequately briefed by the parties, and oral argument will not aid the decisional process. For the reasons discussed below, defendants' motion will be granted in all respects, except as to the trespass claim, which will be held in abeyance to allow the parties to brief the issue of whether the trespass notice is overbroad.

## I. BACKGROUND

Plaintiff *pro se* Edward Myers ("plaintiff" or "Myers") has filed an amended complaint naming as defendants Loudoun County Sheriff Stephen O. Simpson ("Simpson"), Deputy James Spurlock ("Spurlock"), and Loudoun County Sheriff's Office employee Audra Vogel ("Vogel"), individually and in their official capacities. *See* Am. Compl. at 1, Against each of the three defendants, Myers seeks damages and prospective injunctive relief under 42 U.S.C. § 1983 for alleged violations of his Fifth and Fourteenth Amendment rights. *See* Am. Compl. at 1.[1] He

---

1. Although Myers names each defendant in his or her official capacity in the caption of the case, the complaint includes no specific allegations against Vogel and Spurlock in their official capacities. The defendants maintain that because Myers has failed to plead his § 1983 claim against defendants in their official capacities, he cannot obtain pro-

also seeks declaratory and injunctive relief against Simpson in his official capacity for alleged violations of the Patsy T. Mink Equal Opportunity in Education Act ("Title IX"), 20 U.S.C. § 1681 *et seq.*, and the Omnibus Crime Control and Safe Streets Act of 1968 ("Safe Streets Act"), 42 U.S.C. § 3789d(c). *See* Am. Compl. at 1.[2] Myers also claims that defendants fraudulently received federal grants in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq. Id.* at 2. Finally, he seeks declaratory relief invalidating what he alleges is an overbroad trespass notice issued by the Loudoun County Sheriff's Office ("LCSO") that prevents him from being present at the Northern Virginia Criminal Justice Training Academy in Ashburn.

The facts alleged in the complaint and not in dispute are that, on multiple occasions, Myers was denied access to LCSO-sponsored "training workshops," which are reserved for women. Compl. ¶ 5.[3] The programs to which Myers seeks access are the various "Women's Self–Defense Workshop[s]," free classes that are open to all female Loudoun County residents over age 14 "to educate women on sexual assault issues and rape awareness." *Id.* ¶ 6 (quoting from LCSO email announcement for the "33rd Women's Self–Defense Workshop"). Myers tried to attend a class held on May 18, 2010, for which his wife was registered, but was prevented from doing so by LCSO employees, including defendant Vogel. *Id.* ¶¶ 6–7.

On November 9, 2010, Myers attempted to attend another "[w]omen only, [i]nformational class" called "Personal Safety for Women." *Id.* ¶ 10. He was informed by defendant Spurlock that he could not attend because the class was exclusively for women. *Id.* In April 2011, Myers received an announcement for the "35th Women's Self–Defense Workshop" on sexual assault and rape prevention and attempted to register by leaving a voicemail for Vogel. *Id.* ¶ 12. He also "communicated [to Sheriff Simpson via an LCSO employee] his expectation that he would be allowed to attend the class," *Id.* On April 26, 2011, when Myers attempted to enter the Northern Virginia Criminal Justice Training Academy, which is where all these classes

---

spective injunctive relief. Myers' opposition states that he seeks prospective injunctive relief against these defendants to prevent them from excluding men from the LCSO self-defense classes, or refusing to offer comparable classes to males. In light of Myers' prayer for relief in his original complaint, his request for a declaration that his rights were violated, and his *pro se* status, the Court reads the amended complaint to request prospective injunctive relief. In any event, because, for the reasons to follow, the self-defense classes do not violate the United States Constitution, Myers cannot sustain his official capacity suit for substantive reasons.

**2.** This is Myers' second attempt at litigating against the three defendants. After oral argument on defendants' first motion to dismiss, the original complaint was dismissed for various pleading defects. Leave was granted to re-file, although the Title IX and Safe Streets

Act claims against Vogel and Spurlock and against Simpson in his individual capacity were dismissed with prejudice. *See Bracey v. Buchanan,* 55 F.Supp.2d 416, 419 (E.D.Va. 1999) ("It is impossible to bring a Title IX action against an individual.... Title IX operates to condition an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.") (internal quotation marks omitted).

**3.** Because Myers' amended complaint does not re-state the factual allegations from the original complaint, the Court cites to both pleadings in laying out the basis for the allegations. As neither complaint separates the plaintiff's claims into respective counts the Court addresses each claim based on the apparent legal basis for the claim, *i.e.,* § 1903, Title IX, etc ...

were held, Simpson met him at the door and "delivered a trespass notice." *Id.* ¶ 13, Ex. C. Myers was told he would not be permitted to enter the Academy because "women, some of which [sic] might have been raped, would be uncomfortable with men in the classroom." *Id.* Myers alleges that he informed defendants that as recipients of federal funds, they were violating federal laws that prohibit sex discrimination. *Id.* ¶ 8.

Myers has received notice of the thirty-sixth and thirty-seventh women's self-defense workshops. *See* Compl. ¶ 14; Am. Compl. at 3–4. He alleges that defendants "continue to discriminate against men in general and Plaintiff in particular" by offering such classes only to women. *See* Am. Compl. at 3–4. Additionally, Myers claims that the trespass notice he received from Simpson on April 26, 2011 effectively prevents him from attending other public education events that are held at the same location as the women's self-defense classes, He seeks a declaration that his civil rights have been violated, an award of filing fees and costs, money damages sufficient to deter future violations, and various monetary remedies for the alleged FCA violation. *See id.* at 4–5.

## II. DISCUSSION

### A. *Standard of Review*

■ Pleadings filed by a *pro se* party must be "liberally construed." *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotations marks omitted). Under Fed.R.Civ.P. 12(b)(6), the Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. *Smith v. Sydnor,* 184 F.3d 356, 361 (4th Cir.1999). This requirement applies to facts alone and not to legal conclusions. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Nevertheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 1950 (internal quotation marks omitted). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

■ Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed.R.Civ.P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what ... the claim is and the ground upon which it rests." *Id.* at 555, 127 S.Ct. 1955. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950.

### B. *Section 1983 Claim*

■ Myers seeks "damages under ... [42 U.S.C] § 1983 via the due process and equal protection clauses of the 5th and 14th Amendments ... against each defendant individually." Am. Compl. at 1. Section 1983, which prohibits a person acting "under color of" state law from depriving individuals of their federal rights, provides a cause of action to a plaintiff who must show that a government official actually violated the United States Constitution. *See Hope v. Pelzer,* 536 U.S. 730, 735–36, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Government officials whose conduct involves the performance of discre-

tionary functions are protected against § 1983 suits for damages by the doctrine of qualified immunity, which is an affirmative defense. Qualified immunity shields government officials who, "[d]espite ... participation in ... constitutionally impermissible conduct, ... did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hope,* 536 U.S. at 739, 122 S.Ct. 2508 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The "clearly established" standard of qualified immunity ensures that government officials are on fair notice that their conduct is impermissible.

Defendants have raised qualified immunity as a defense. Therefore, Myers must show that the LCSO's decision to offer sexual assault and rape awareness classes exclusively to women, without including men or offering men comparable classes, is unconstitutional, and, furthermore, that the LCSO's decision violated a clearly established constitutional right such that defendants reasonably should have known their behavior was unconstitutional.

### 1. *Constitutional Violation*

■■■ Defendants argue that offering women-only self-defense classes does not violate equal protection because it meets the "exceedingly persuasive" standard established by the Supreme Court in gender discrimination cases. *See United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996) (hereinafter, the "VMI case"). Specifically, the VMI case explained that for a policy with a gender-based classification to withstand equal protection scrutiny, that classification must serve "'important governmental objectives and the discriminatory means employed' [must be] 'substantially related to the achievement of those objectives.'" *Id.* (quoting *Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 724, 102 S.Ct. 3331, 73

L.Ed.2d 1090 (1982) (applying intermediate scrutiny to strike down admissions policy excluding men because women were not previously disadvantaged in nursing school admissions)); *accord Nguyen v. INS,* 533 U.S. 53, 60–61, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001). Relying on the VMI case, defendants correctly argue that while so-called inherent differences cannot be grounds for sex-based classifications, governments can use sex-based classifications to, for example, compensate women for economic disadvantages they have suffered, promote employment opportunity, and "advance full development of the talent and capacities of our Nation's people." 518 U.S. at 533–34, 116 S.Ct. 2264. Defendants, who maintain that women are seven times more likely than men to be raped during the course of their lives, argue that it is clearly constitutional to address past disadvantages and that the LCSO's free classes on sexual assault and rape awareness, which are designed to teach women how to protect themselves from becoming victims, serve the important governmental objective of seeking to reduce the "dramatically high prevalence" of sexual assault and rape. *See* Mem. Supp. Mot. to Dismiss Am. Compl. ("Defs.' Mem.") at 8. Defendants argue that the physical differences between the genders and the statistical differences where rape is concerned support the LCSO's decision to offer women-only self-defense classes. *Id.*

Myers does not dispute that disparate treatment based on gender can be constitutional. Rather, he argues that defendants have "failed to meet the standard required for legal sex discrimination" because the argument that women are more likely to be sexually assaulted is "a tiny factual fig leaf" in light of data reporting that one-fifth of sexual assault victims are male. *See* Mem. in Opp'n to Def.'s Mot. to Dismiss Am. Compl. ("Pl.'s Opp'n") at 2–3

(disputing the LCSO's statistic that women are seven times more likely to be sexually attacked by asserting that the real number is four times more likely). Myers maintains that the LCSO has never held a male-only self-defense class, and in eighteen years has not held a co-ed class, yet it has held thirty-seven women-only classes. *Id.* Myers further argues that not only can men be victims of sexual assault, but men should also be able to attend these classes in order to protect women. *Id.* at 4. He goes on to argue at length that men are slightly more likely to be victims of non-sexual violent crime and if weapons are involved, a man's larger size may not protect him from injury. *Id.* at 3–4.

Although men, like women, are potential crime victims and could benefit from self-defense training, Myers' argument about violent crime generally confuses the primary issue here, which is whether the LCSO can constitutionally offer classes aimed at improving awareness about the potential for sexual assault and rape exclusively to women. With respect to the constitutionality of offering such classes, defendants correctly argue that Myers' "essay on the economic costs of violent crime is irrelevant, as is his speculation about the benefits of general self-defense training for all citizens." Reply to Opp'n to Mot. to Dismiss ("Defs.' Reply") at 2. Because the courses aim to educate women on sexual assault issues, defendants rightly point out that "[a]ny statistic other than women's relative chances of being raped is not relevant to an equal protection analysis of the course." *Id.*

■ Sex-based classifications that rely on mere gender stereotypes are clearly unconstitutional after the VMI case. 518 U.S. at 532–35, 116 S.Ct. 2264. A government wanting to benefit one gender must show that it is advancing an important governmental interest and that its means

of achieving the interest are sufficiently narrowly tailored. Defendants' justification that "for a variety of social and economic reasons too complex to detail, women are, even using Plaintiff's statistics, four times more likely than men to be raped" so that "[w]hen it comes to being protected against rape, women are at an extreme disadvantage," meets the exceedingly persuasive standard. *See* Defs.' Reply at 3. Moreover, the LCSO has determined that women, some of whom may have been victims of sexual violence, are more likely to participate if the class is single-sex. *See* Compl. ¶ 13. Under equal protection jurisprudence, the arguments and statistical data cited by the parties justify the LCSO's measures to discriminate in favor of women with respect to rape prevention measures. Such measures, therefore, do not violate the Fourteenth Amendment.

### 2. *Qualified Immunity and Clearly Established Rights*

■ Even assuming, *arguendo*, that the women-only classes violate equal protection, Myers' request for damages fails because the defendants are protected by qualified immunity. *See Harlow*, 457 U.S. at 818, 102 S.Ct. 2727 ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); *see also, e.g., Johnson v. Caudill*, 475 F.3d 645, 651 (4th Cir.2007) (decision may be unwise but not rise to a violation of clearly established law); *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.") (citing *Anderson v. Creighton*, 483 U.S. 635, 639–40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).

Myers advances no serious argument that under clearly established Fourth Circuit or Supreme Court law, women-only sexual assault and rape awareness and prevention classes are unconstitutional. Instead, he analogizes the LCSO's courses to class offerings of public grade schools and universities, but he cites no legal support for the argument that a special workshop offered by a local law enforcement agency is to be treated the same way, nor does he show that a public school would, in any case, be barred from offering a girls-only rape prevention class. *Cf. Doe ex rel. Doe v. Vermilion Parish Sch. Bd.*, 421 Fed.Appx. 366, 369–70 (5th Cir.2011) (describing but not ruling on legal basis for single-sex public education); *A.N.A. ex rel. S.F.A. v. Breckinridge Cnty. Bd. of Educ.*, No. 3:08cv4S, 833 F.Supp.2d 673, 679–83, 2011 WL 2437809, at *5–8 (W.D.Ky. June 13, 2011)(making fact-based inquiry into whether students are harmed by single-sex education).[4]

There is simply no factual or legal basis in this record to support the position that the defendants have lost their immunity from suit for violating "clearly established" constitutional law. The case law on gender classifications permits disparate treatment of persons based on gender where the government offers an "exceedingly persuasive" justification that does not rely on inherent prejudices or specious innate differences. Here, defendants have offered a legitimate justification for their actions. Therefore, even if the women-only sexual assault and rape awareness and prevention courses violated Myers' constitutional rights, the doctrine of qualified immunity would operate to bar the suit for damages. For these reasons, the § 1983 claim against the defendants will be dismissed.

### C. *Title IX and Safe Streets Act Claims*

▆▆▆▆ Myers also alleges that Simpson, in his official capacity, violated Title IX and the Safe Streets Act by engaging in unlawful gender discrimination while accepting federal funds.[5] Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," unless a specific exception applies. 20 U.S.C. § 1681(a). Authority over the last 15 years, in addition to the VMI case, demonstrates that single-sex education and other voluntary affirmative action may be appropriate under certain circumstances. For example, a Department of Education regulation states that even "[i]n the absence of a finding of discrimination on the basis of sex in an education program or activity, a recipient may take affirmative action to overcome the effects of conditions which resulted in limited participation therein by persons of a particular sex." 34 C.F.R. § 106.3(b).

---

**4.** In the same vein, Myers tries to depict defendants as having "rejected legal advice procured by Plaintiff." Pl.'s Opp'n at 5. In fact, the "legal advice" to which he refers are letters he obtained from the United States Department of Justice Civil Rights Division that merely explain that, because the LCSO is a recipient of federal funds, the Civil Rights Division has jurisdiction to investigate sex discrimination claims against it and that it was initiating an investigation based on Myers' formal complaint. *See* Compl., Exs. A, B. The letters do not, as Myers tries to suggest, establish that the Department of Justice found the LCSO program unconstitutional.

**5.** Neither party presents case law specifically addressing the Safe Streets Act, but courts treat alleged discrimination in violation of that statute the same as alleged violations of other federal funding statutes. *See, e.g., Ensley Branch NAACP v. Seibels*, 31 F.3d 1548 (11th Cir.1994).

Likewise, following notice and comment for implementing regulations promulgated pursuant to Title IX, the Department of Justice, alongside other federal agencies, addressed the "viability of single-sex programs such as an educational science program targeted at young women and designed to encourage their interest in a profession in which they are underrepresented." *See* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 65 Fed.Reg. 52,858, 52,861 (Aug. 30, 2000)(codified at 28 C.F.R. pt. 54). The Department explained that "[s]uch courses may, under appropriate circumstances, be permissible as part of a remedial or affirmative action program" as provided for under Title IX regulations. *Id.*

Given the Court's previous finding that defendants have not violated the plaintiff's right to equal protection and given that regulations promulgated pursuant to Title IX permit affirmative action, the Court finds no legal basis for Myers' claim that Simpson has violated Title IX and the Safe Streets Act; therefore, those claims will be dismissed.

### D. *False Claims Act Allegation*

Myers alleges that the defendants, while knowingly engaging in a pattern of unlawful sex discrimination, violated the FCA by falsely certifying to federal funding agencies that the LCSO implements non-discriminatory policies. *See* Am. Compl. at 2. In pertinent part, that statute provides that a civil penalty and treble damages may be imposed on an individual who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval ... [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" to the United States Government. *See* 31 U.S.C. § 3729(a)(1)(A), (b). Myers cannot sustain this claim for numerous reasons.[6] The principal reason is that the sheriff is a state constitutional officer, and the Supreme Court has held that states and state agencies are not subject to FCA *qui tam* liability. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 781–82, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ("[V]arious features of the FCA, both as originally enacted and as amended, far from providing the requisite affirmative indications that the term 'person' included States for purposes of *qui tam* liability, indicate quite the contrary.").[7] As such, the FCA claim will be dismissed.

### E. *Overbroad Trespass Notice Claim*

Myers' last claim is that the trespass notice he received from Sheriff Simpson in

---

**6.** In addition to the FCA claim's core substantive failing, Myers has failed to comply with the procedural preconditions for filing an FCA claim. Specifically, a person instituting an action pursuant to the FCA must file the complaint *"in camera"* and it "shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2). Moreover, Myers acknowledges that he may not proceed *pro se.* The United States is the real party in interest in FCA litigation, and a non-attorney may not represent another individual or entity. *United States ex rel. Brooks v. Lockheed Martin Corp.,* 237 Fed.Appx. 802, 803 (4th Cir.2007). Finally, FCA complaints are governed by the heightened pleading standard of Fed.R.Civ.P. 9(b), which the amended complaint does not meet. *See, e.g., U.S. ex rel. Owens v. First Kuwaiti General Trading & Contracting Co.,* 612 F.3d 724, 731 (4th Cir. 2010) (citing *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 373 (4th Cir.2008)).

**7.** This holding is consistent with the historical fact that "the FCA was enacted in 1863 with the principal goal of stopping the massive frauds perpetrated by large private contractors during the Civil War." *Vt. Agency of Natural Res.,* 529 U.S. at 781, 120 S.Ct. 1858 (alterations in original omitted).

April 2011 is overbroad and, therefore, unconstitutional. He asks the Court to issue declaratory relief nullifying the trespass notice. *See* Am. Compl. at 1; Pl.'s Opp'n at 6. The notice informs Myers that his "presence on or in" the Northern Virginia Criminal Justice Training Academy in Ashburn "will not be tolerated and that [he is] to refrain from entering therein or thereon for any reason whatsoever." Compl., Ex. C. Defendants acknowledge that Loudoun County public meetings having nothing to do with the women-only self-defense classes are also held at this facility, and they do not dispute that the trespass notice prevents Myers from attending those public meetings.

Neither side clearly or adequately frames the legal issues implicated here. Plaintiff cites no case in which a court invalidated an allegedly overbroad trespass notice on similar facts, nor have defendants adequately supported their position that a person has no liberty interest in attending government-sponsored meetings of public importance. Defendants also fail to explain why their legitimate interest in preventing Myers from disrupting the women-only self-defense classes cannot be served with a more narrowly tailored trespass notice. For these reasons, the parties will be directed to brief the trespass issue more thoroughly, unless they are able to resolve the scope of the notice themselves.

## III. CONCLUSION

For the above-stated reasons, the Court finds that Myers has failed to state a claim under § 1983 for gender discrimination and has also failed to state claims for violations of Title IX, the Safe Streets Act, and the FCA. Accordingly, the defendants' motion to dismiss will be granted as to all claims in the original and amended complaints, except for the trespass claim. An Order implementing these decisions will be issued with this opinion.

### *MEMORANDUM OPINION*

The plaintiff *pro se* Edwards Myers ("Myers" or "plaintiff") filed this action against Loudoun County Sheriff Stephen O. Simpson ("Simpson"), Deputy James Spurlock ("Spurlock"), and Loudoun County Sheriff's Office employee Audra Vogel ("Vogel"), individually and in their official capacities (collectively, "defendants"). In an Order dated December 9, 2011, the defendants' second Motion to Dismiss was granted as to the plaintiff's claims pursuant to 42 U.S.C. § 1983, 20 U.S.C. § 1681 *et seq.*, 42 U.S.C. § 3789d(c), and 31 U.S.C. § 3729 *et seq. See* Dkt. 26. The Court held in abeyance the plaintiff's request for nullification of a trespass notice (hereinafter, "notice") that he had received and ordered the parties to brief the issue further. Since that time, the plaintiff has filed a Motion to Reconsider Order to Dismiss ("Motion to Reconsider")[Dkt. No. 28], in which he seeks reconsideration of the Court's dismissal of his claims and responds to the defendants' timely-filed arguments as to the notice. As grounds for his Motion to Reconsider, the plaintiff contends that the Court erred by not discussing *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), which the plaintiff relies on to argue that "a single crime statistic" is an insufficient basis for disparate treatment. *See* Dkt. No. 28 at 1. The plaintiff also argues that the Court failed to consider the "key fact that some of the [Loudoun County Sheriff's Office ("LCSO")] women-only classes provided personal safety training instead of rape awareness." *Id.* The parties have filed their respective opposition and reply, and the Court finds that oral argument will not aid the decisional process.

## I. DISCUSSION

### A. *Trespass Notice*

The plaintiff claims that the notice at issue in this case is overbroad because it prevents him from attending any Loudoun County public meetings held at the Northern Virginia Criminal Justice Training Academy § "NVCJTA"), and he asks the Court to nullify the notice. *See* Compl. ¶ 15; Dkt. No. 22 at 6. Signed by the NVCJTA's deputy director on April 26, 2011 and attached to the original complaint, the notice informs the plaintiff that his "presence on or in" the NVCJTA, located at 45299 Research Place in Ashburn, "will not be tolerated and that [he is] to refrain from entering therein or thereon for any reason whatsoever." *See* Compl., Ex. C.[1] Yet, the defendants now represent for the record that the NVCJTA's executive director has rescinded the notice. *See* Dkt. No. 31 at 1–2. Because this notice has been rescinded, the defendants correctly argue that the issue is now moot. *See Mellen v. Bunting,* 327 F.3d 355, 363 (4th Cir.2003) ("[A] case is moot when the issues presented are no longer live or the parties lack a legally-cognizable interest in the outcome. The requirement that a case have an actual, ongoing controversy extends throughout the pendency of the action.") § citations and internal quotation marks omitted). Accordingly, the remaining claim for injunctive relief as to the notice will be dismissed.

### B. *Motion to Reconsider*

The plaintiff also seeks reconsideration of the Court's dismissal of his discrimination claims. As the defendants correctly note, the plaintiff filed the motion before final judgment was entered in this civil action, making the motion technically premature; however, because the plaintiff is *pro se* and the defendant will not be prejudiced, the motion will be resolved. A motion to reconsider is usually brought under either Fed.R.Civ.P. 59 or 60.[2] Motions to alter or amend final judgments pursuant to Fed.R.Civ.P. 59(e) may be granted if necessary "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir.1998) (citations omitted). The power to grant or deny a motion under Rule 59(e) is discretionary, and "[i]n general reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* (internal quotation marks omitted); *see also Robinson v. Wix Filtration Corp.,* 599 F.3d 403, 411 (4th Cir.2010).

A motion for relief from judgment under Fed.R.Civ.P. 60(b) may be granted for:

(1) mistake, inadvertence, surprise, or excusable neglect;

(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

---

1. Myers' amended complaint does not re-state the factual allegations from the original complaint or re-attach the exhibits; therefore, the Court cites to both pleadings.

2. The defendants state that the plaintiff is time-barred under Rule 59(e) because he filed the motion more than twenty-eight days after the Court entered its Order dismissing the claims in question. *See* Dkt. No. 31 at 2. In taking this position, however, the defendants incorrectly state that the Order was issued on December 6, 2011, when in fact it was signed and entered on December 9, 2011 [Dkt. No. 26], which makes the plaintiff's January 6, 2012 filing timely.

(4) the judgment is void;

(5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6) any other reason that justifies relief.

Additionally, a movant under Rule 60(b) must "demonstrate the existence of a meritorious claim or defense" to the action. *Square Constr. Co. v. Wash. Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981). Because the plaintiff does not specify under which rule he seeks reconsideration, the Court has considered his motion under both rules.

As an initial matter, a motion to reconsider is "not authorized when it is nothing more than a request for the district court to change its mind." *Lee X v. Casey*, 771 F.Supp. 725, 728 (E.D.Va.1991)(citing *United States v. Williams*, 674 F.2d 310, 313 (4th Cir.1982)) (discussing Rule 60(b)); *see also Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n. 5, 128 S.Ct. 2605, 171 L.Ed.2d 570 (2008) ("Rule 59(e) ... may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.") (internal quotation marks omitted). In his Motion to Reconsider, the plaintiff first argues that under *Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976), which is precedent the plaintiff did not cite in his prior filings but of which the Court is well aware, the rape victimization statistics previously cited by the parties are insufficient to support the finding that the LCSO classes satisfy intermediate scrutiny. *See* Dkt. No. 28 at 3–4. The plaintiff incorrectly implies that *Craig* prescribed a formula for determining whether a particular piece of evidence "establishe[s] that [a] gender-based distinction [is] substantially related to

achievement of that goal." 429 U.S. at 199, 97 S.Ct. 451.

In *Craig,* a state statute that set a higher age limit for men with respect to the purchase of alcohol was held unconstitutional after the Court found that the "variety of statistical surveys" introduced by the parties clearly failed to show that "maleness ... serve[s] as a proxy for drinking and driving...." *Id.* at 201–02, 97 S.Ct. 451. *Craig* simply does not point to a conclusion different than the one reached in this case by this Court, nor does *Craig* conflict with the Supreme Court precedent cited in the Memorandum Opinion [Dkt. No. 25]. The *Craig* decision is in accord with the line of cases, such as *United States v. Virginia,* 518 U.S. 515, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996), and *Nguyen v. INS,* 533 U.S. 53, 121 S.Ct. 2053, 150 L.Ed.2d 115 (2001), holding that the "heightened review standard our precedent establishes does not make sex a proscribed classification"; rather, "[s]ex classifications may be used to compensate women" for particular disabilities they have suffered and to promote equal opportunity and development. 518 U.S. at 533–34, 116 S.Ct. 2264; *see also Miss. Univ. for Women v. Hogan,* 458 U.S. 718, 728, 102 S.Ct. 3331, 73 L.Ed.2d 1090 (1982) ("[a] gender-based classification favoring one sex can be justified if it intentionally and directly assists members of the sex that is disproportionately burdened.").

In further support of his Motion to Reconsider, the plaintiff argues that one of the LCSO classes, offered in November 2010, was not focused on sexual assault and rape prevention and that this fact invalidates the Court's prior reasoning. See Dkt. No. 28 at 1–2. The original complaint contains only a one-paragraph reference to this class, describing it as "Personal Safety for Women (Women Only, Informational Class)" and noting

that it was "held in a public room of the police station." *See* Compl. ¶ 10. The plaintiff did not mention the class in his amended complaint. What is more, the plaintiff never discussed it in his opposition to the motion to dismiss nor did he dispute the defendants' argument that the LCSO classes were focused on sexual assault and rape prevention. *See* Dkt. No. 22 at 2–5. Instead, he initially only challenged the defendants' statistics and their policy decision to devote special police resources to rape prevention. Even had the plaintiff properly advanced the arguments he now raises in his Motion to Reconsider, one class that focuses on women's safety more broadly, rather than focusing solely on awareness of sexual assault threats, does not warrant reconsideration of the Court's decision. By the plaintiff's allegations, the defendants had offered thirty-seven women-only self-defense courses directed at sexual assault awareness and rape prevention; that they may have also given a female-only class focusing on broader self-defense issues does not alter the conclusion that no violation of the Fourteenth Amendment's Equal Protection Clause has occurred.

Finally, in his reply brief, the plaintiff points to the January 6, 2012 announcement by the Department of Justice that the Federal Bureau of Investigation's ("FBI") definition of rape would be expanded to include more forms of sexual violence. Among the announced changes, the FBI will now include within its rape statistics the rape of men, which most states, including Virginia, already statutorily recognize. The FBI announcement does, indeed, qualify as new information not previously available to the plaintiff through the exercise of due diligence. The new fact has therefore been reviewed and considered, yet the FBI's modernization of how it maintains statistics for rape offenses does not alter this Court's analysis

with respect to the constitutionality of the LCSO's classes or the qualified immunity to which the defendants are entitled.

## II. CONCLUSION

The plaintiff has not provided grounds meriting revision to the Court's prior ruling under either Rule 59(e) or 60(b). Specifically, except where previously noted, he has failed to point to an intervening change in controlling law, new evidence not previously available through diligence, clear error of law, or a manifest injustice. *See, e.g., Robinson,* 599 F.3d at 411; *Pacific Ins. Co.,* 148 F.3d at 403. Likewise, the plaintiff has not implicated any of the bases for reconsideration under Rule 60(b). Additionally, the trespass notice is no longer a live controversy following the rescission of the notice by the NVCJTA, which rendered the issue moot. For these reasons, the defendants' Motion to Dismiss will be granted in full, and the Motion to Reconsider will be denied by an Order to be issued with this Memorandum Opinion.